842 So.2d 100 (2003)
In re CERTIFICATION OF NEED FOR ADDITIONAL JUDGES.
No. SC02-2568.
Supreme Court of Florida.
February 5, 2003.
PER CURIAM.
Article V, section 9 of the Florida Constitution places an important responsibility on this Court to determine, prior to each year's regular legislative session, the need for increasing or decreasing the number of state judges and the need for redefining the jurisdictional boundaries of the district and circuit courts.[1] The certification process *101 is the mechanism that our constitution establishes for the systematic, uniform assessment of the State's need for judicial resources.
Pursuant to this constitutional mandate, we have considered judgeship requests submitted by the appellate and trial courts, examined case filing and disposition data, and analyzed various judicial workload indicators. Based on our review of these factors, conducted pursuant to uniform criteria established by rule,[2] we conclude that there is a need for two additional judges in the district courts of appeal, thirty-three in the circuit courts, and twenty-one in the county courts.

DISTRICT COURTS OF APPEAL
Using the criteria for certifying the need for additional district court judges set forth in Florida Rule of Judicial Administration 2.035(b)(2), we certify the need for one additional district court judge for the Second District and one for the Fourth District. These two judgeships were also certified in last year's opinion, see In re Certification of Need for Additional Judges, 806 So.2d 446, 448 (Fla.2002), but not legislatively authorized and funded.
We note that the district courts of appeal have been very conservative in their requests for additional judgeships over the last ten years in spite of significantly increasing caseloads. To their credit, instead of requesting additional judges, the district courts have pursued a variety of alternatives to address these increased caseloads, including the increased use of senior judge time, the development of case management systems, the use of information technology to assist in legal research, and the expanded use of central staff attorneys. Since fiscal year 1992-93, the number of annual filings in each district court has risen steadily. However, the number of judges in the district courts has remained constant since 1993, except for the addition of one judgeship in the Fifth District in 1999. Significantly, the total of 23,590 cases filed in the district courts in fiscal year 2000-01 represents an increase of some twenty-seven percent over the filings for fiscal year 1992-93. The courts have been restrained, however, in seeking additional judicial resources to meet the increased filings. But the Second and Fourth Districts have determined that they have exhausted alternatives and are now seeking a modest increase. Even given the innovative approaches the district courts have developed to efficiently and fairly hear cases, the Second and Fourth Districts each require an additional judge.[3] *102 In fiscal year 2000-01, the Second District averaged nearly 415 case filings and 273 dispositions per judge after submission on the merits. The Fourth District averaged 418 case filings and 236 dispositions per judge after submission on the merits, for the same time period. The statewide average for fiscal year 2000-01 was 381 case filings and 241 dispositions per judge after submission on the merits.
The Second District was last authorized additional judgeships a decade ago during the 1993 Legislative Session. Since that time, the Legislature has authorized thirty-one additional circuit judges in the geographic area served by the Second District. The current ratio of circuit judges to district judges in the Second District is ten to one. Hence, there has been a dramatic increase in trial court activity that spawns appeals. The district's population also exceeds four million people, which represents more than a twenty-one percent increase since 1990. The Second District experienced a twelve percent increase in filings from fiscal year 1999-00 to fiscal year 2000-01 alone. Further, there has been a fifteen percent increase in the number of dispositions by the district judges after submission on the merits over the same period.
In order to address this growing workload on an interim basis, the Second District's use of senior judge time during fiscal year 2000-01 was highest in the state. However, the chief judge of the district notes, and we agree, that senior judge use is not a permanent solution for addressing a significantly increasing judicial workload.
The Fourth District was last authorized additional judgeships during the 1988 Legislative Session. Since that time, the Legislature has authorized twenty-five additional circuit judges for circuits within the Fourth District. The current ratio of circuit judges to district judges for the Fourth District is 8.5 to 1. The district's population exceeds three million people, which is more than a twenty-nine percent increase since 1990. Case filings in the Fourth District have increased by thirteen percent from fiscal year 1999-00 to fiscal year 2000-01, the highest increase in the state for that period. Dispositions after submission on the merits also increased by six percent during the same period.
The chief judge of the Fourth District notes that increases in the number of practicing attorneys, general litigiousness, and increased activity within each case impacted the district's judicial workload, as well.
Given the high caseload, increases in population, and growth in the circuit courts within the Second and Fourth Districts, efficiency measures implemented by the district courts are no longer adequate to offset the need for additional judgeships.

TRIAL COURTS
In 2002, we certified the need for an additional forty-seven judgeships. See In re Certification of Need for Additional Judges, 806 So.2d 446, 450-52 (Fla.2002). Of the forty-seven trial court judgeships requested, only eighteen were funded, all at the circuit court level. However, based upon our application of the Delphi methodology for evaluating need,[4] we now must *103 report to the Legislature that this increase in judgeships has proven insufficient to address the overall judicial need in Florida's trial courts. We hereby certify the need for thirty-three additional circuit judges and twenty-one additional county judges.
Since our first certification using the Delphi methodology suggested by the Legislature, see In re Certification of the Need for Additional Judges, 755 So.2d 79 (Fla. 2000), the Legislature has authorized only thirty percent of the trial court judges certified. Hence, the State Courts System continues to experience a substantial judicial deficit given the growing workload. This deficit continues to grow despite the availability and extensive use of key supplemental resources.
This year, as in previous years, the Court used the Delphi-based workload weighting system to determine the need for judges in the twenty judicial circuits.[5] The result of that analysis has been considered by the chief judges of the circuit courts and by this Court in the determination of the need for judicial resources.
Existing judicial resources are strained by the nature, complexity, and volume of certain civil cases (e.g., professional malpractice, tobacco, and eminent domain cases); the significant growth in the number of family law cases (e.g., child support) and postjudgment work associated with dissolutions of marriage; workload related to domestic violence and repeat violence cases; the volume and complexity of juvenile delinquency, serious felonies, and postconviction proceedings; and the creation and expansion of effective, but labor-intensive, specialized case processing techniques (e.g., juvenile and adult drug courts, mental health courts, elder courts, and domestic violence courts).
In previous certification opinions, this Court has emphasized the need for the adequate allocation of judicial time and resources for juvenile delinquency and dependency cases. We commend the trial courts for their diligent efforts in responding to that need. Considerable progress has been made, yet more remains to be done. Children are Florida's most precious resource. Children who are involved in the judicial system have special needs, and it is critical that all three branches of government work collaboratively to ensure that cases involving children who are abused, neglected, or delinquent are given sufficient and appropriate judicial attention.[6] Accordingly, we encourage the trial courts to continue their efforts to ensure that adequate judicial resources are devoted to those divisions of the court serving children and families.
*104 The chief judges of the various circuit courts also advised us of other factors that may significantly impact circuit court workload including the litigiousness of the local legal culture, state attorney filing practices, pre- and post-filing motion practices, postjudgment matters, the presence of gangs, the number of migrant workers or other transient populations, and the presence of major tourist attractions such as beaches or theme parks. Demographic issues, such as the significant growth of non-English speaking residents and the attendant number of court interpretations required, the increased aging of Florida's population and resulting increase in guardianship cases, the presence of multiple correctional and juvenile facilities, population growth, and geographic considerations in multi-county circuits also place additional workload demands on the circuits.
Overall, county court filings have increased three percent from fiscal year 1999-00 to fiscal year 2000-01, and are projected to grow at a similar rate for the next few years. For those courts requesting county judgeships, the largest increases at the county court level are found in civil case filings. County civil filings increased thirteen percent from fiscal year 1999-00 to fiscal year 2000-01, and are projected to increase approximately seven percent from fiscal year 2000-01 to fiscal year 2001-02. Civil filings have the second highest Delphi weight at the county court level and thus represent a significant proportion of county court workload. County criminal filings and traffic filings are also increasing, albeit at a slower rate.
Other factors impacting the workload of county courts include large increases in population, the number of cases filed, incomplete authorization of judgeships previously certified, travel between branch courthouses in urban counties, caseload backlog, and a lack of traffic infraction hearing officers.
While it is beyond the immediate charge of judicial certification, this Court would be remiss if we did not state our concerns regarding the impact of Revision 7 to article V of the Constitution. Approved by the citizens of Florida in 1998, Revision 7 requires that a greater portion of trial court operating costs be borne by the State. Florida's trial courts are complex organizations that are substantially dependent upon support resources beyond judges alone. These resources are in place to assist judges with their caseloads so that Florida's citizens have ready access to their court system, and are essential to the trial courts' efficient and effective operation. Examples include trial court staff attorneys, case managers, court administration, and masters and hearing officers. The counties are currently contributing significantly to the cost of these resources. As we have pointed out in previous certification opinions, any reduction in those resources would likely result in the need for additional judges.[7]
More importantly, the proper funding of the judicial branch ensures that our citizens' constitutional right of access to their courts and the fair and timely resolution of disputes are protected. We recognize the many difficult challenges confronting the Legislature over the next several years. We also acknowledge and appreciate the Legislature's demonstrated commitment to proper funding of the judicial branch and are confident that commitment will be sustained during implementation of Revision 7.
After reviewing the requests of the trial courts for additional circuit judges and *105 county judges in light of the foregoing considerations, we certify the need for thirty-three new circuit judges for fiscal 2003-04 as follows:
 five additional circuit judges each for the Eleventh and Seventeenth circuits;
 three additional circuit judges each for the Thirteenth and Twentieth circuits;
 two additional circuit judges each for the First, Fifth, Ninth, Fifteenth, and Nineteenth circuits; and
 one additional circuit judge each for the Third, Fourth, Sixth, Seventh, Eighth, Tenth, and Fourteenth circuits.
We certify the need for twenty-one new county court judges for fiscal year 2003-04 as follows:
 three additional county judges each for Broward, Hillsborough, and Palm Beach counties;
 two additional judges for Orange County; and
 one additional county judge each for Bay, Brevard, Collier, Columbia, Dade, Duval, Lake, Marion, Pasco, and Seminole counties.
The requests and certifications are illustrated in the following table.[8]

 Trial Court Certification Table
-------------------------------------------------------------------------------------
Circuit Judgeships Judgeships County Court Judgeships Judgeships
Court Requested Certified Requested Certified
=====================================================================================
First 2 2
Second 0 0
Third 1 1 Columbia 1 1
Fourth 1 1 Duval 1 1
Fifth 2 2 Lake 1 1
 Marion 1 1
Sixth 1 1 Pasco 1 1
Seventh 1 1
Eighth 1 1
Ninth 2 2 Orange 2 2
Tenth 1 1
Eleventh 5 5 Dade 3 1
Twelfth 0 0
Thirteenth 3 3 Hillsborough 3 3
Fourteenth 1 1 Bay 1 1
Fifteenth 2 2 Palm Beach 3 3
Sixteenth 1 0
Seventeenth 5 5 Broward 3 3

*106
Eighteenth 1 0 Brevard 1 1
 Seminole 1 1
Nineteenth 2 2
Twentieth 3 3 Collier 1 1
=====================================================================================
Total 35 33 Total 23 21
-------------------------------------------------------------------------------------

Since the tragedy of September 11, 2001, there has been a renewed focus on the rule of law administered by an independent judicial system. In this country more than ninety-five percent of judicial activity takes place in the state courts. In effect then the rule of law is administered by the Florida State Courts and Florida judges. While recognizing that these are austere economic times, this opinion fulfills our constitutional mandate to certify the need for additional judgeships that we have determined necessary to maintain the fair and timely administration of justice in Florida's court system.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Article V, section 9, Florida Constitution, provides:

Determination of number of judges.The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits. If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need. Upon receipt of such certificate, the legislature, at the next regular session, shall consider the findings and recommendations and may reject the recommendations or by law implement the recommendations in whole or in part; provided the legislature may create more judicial offices than are recommended by the supreme court or may decrease the number of judicial offices by a greater number than recommended by the court only upon a finding of two-thirds of the membership of both houses of the legislature that such a need exists. A decrease in the number of judges shall be effective only after the expiration of a term. If the supreme court fails to make findings as provided above when need exists, the legislature may by concurrent resolution request the court to certify its findings and recommendations and upon the failure of the court to certify its findings for nine consecutive months, the legislature may, upon a finding of two-thirds of the membership of both houses of the legislature that a need exists, increase or decrease the number of judges or increase, decrease or redefine appellate districts and judicial circuits.
[2] Fla. R. Jud. Admin. 2.035.
[3] In 1997, this Court directed the Judicial Management Council to conduct an in-depth study of workload, jurisdiction, and related policy issues for the district courts of appeal. The Council's Committee on Appellate Court Workload and Jurisdiction proposed the adoption of a new appellate court workload standard of 385 filings per judge or 225 dispositions per judge after submission on the merits. These two standards, whether considered separately or together, represent the levels at which a district court is presumptively in need of additional judicial resources. These standards are significantly higher than the current standard of 250 case filings per judge and reflect the infusion of support staff and other resources over the last decade which have enabled the district courts to keep pace with workload increases.
[4] The Delphi methodology relies on case weights and calculations of available judge time to determine the need for additional trial court judges. The development of this methodology was requested by the Legislature in the 1998 General Appropriations Act.
[5] We have applied the Delphi case weights for all case types. This includes our adjustment of the weights assigned to juvenile dependency proceedings in relation to new judicial workload requirements in chapter 39, Florida Statutes (2002).

We remain concerned that the case weights for delinquency and drug court cases, as recommended by the Delphi Policy Committee, do not reflect sufficient judicial time to adequately address these labor-intensive, complex proceedings. Accordingly, we request the Steering Committee on Families and Children in the Courts and the Task Force on Treatment-Based Drug Courts to reexamine these Delphi weights, conduct a thorough analysis of the workload associated with these types of cases and advise us as to their viability, and make recommendations as to any necessary adjustments to the Delphi weights.
[6] This Court acknowledges with appreciation Governor Bush's commitment to addressing the needs of Florida's families and children including those involved in the court system as evidenced by his remarks at the December 2002 meeting of the Florida Conference of Circuit Judges, during which he emphasized the importance of the juvenile courts and the need for adequate judicial resources to serve those courts.
[7] See In re Certification of Need for Additional Judges, 806 So.2d 446 (Fla.2002); In re Certification of Need for Additional Judges, 780 So.2d 906 (Fla.2001).
[8] If the full complement of judges requested in certifications since 2000 had been funded, it is certain that the present need for additional trial judges would be significantly less. Once the "deficit gap" is addressed, the judgeships certified should reflect a more moderate increase in judicial need over time.