889 So.2d 734 (2004)
In re CERTIFICATION OF NEED FOR ADDITIONAL JUDGES.
No. SC04-2154.
Supreme Court of Florida.
November 30, 2004.
*735 PARIENTE, C.J.
The Florida Constitution vests this Court with the responsibility to determine prior to each year's legislative session whether the state courts have enough judges to meet the needs of our rapidly growing population and increasing demands on our judicial system.[1] This is one of our most crucial duties. Access to justice can only be guaranteed to the people of Florida if there are sufficient numbers of judges to handle ever-growing caseloads in a timely manner. The certification of judges by this Court is the sole mechanism established by our constitution for a systematic and uniform assessment of this need.
We emphasize, as we have in past years, that our analysis of judicial need today is not a statement of what the state courts subjectively want. Rather, it is an assessment of what the state courts need, using uniform criteria established by rule.[2] This assessment is further refined in the case of the need for new trial judges by use of the Weighted Caseload System, developed in cooperation with the Legislature and with substantial input from the National Center for State Courts.[3] Using these objective standards, we have considered judgeship requests submitted by the lower courts, examined case filing and disposition data, and analyzed various judicial workload indicators. Based on our review of these factors, we conclude that there now is a need for two additional judges in the district courts of appeal, sixty-seven additional judges in the circuit courts, and forty-one additional judges in the county courts.

FLORIDA'S STATE COURTS SYSTEM
State courts in Florida safeguard democracy by upholding and interpreting the law, protecting individual rights and liberties, and peacefully resolving disputes. The disputes adjudicated by our courts are diverse and touch the lives of all Floridians. In the civil arena, the *736 courts handle the full panoply of cases ranging from landlord-tenant disputes to complex civil litigation. Cases involving children and families constitute almost fifty percent of our civil filings. Judges make decisions in these cases on crucial issues profoundly impacting children, including adoption, child support, custody and visitation, dependency, and delinquency. In the criminal arena, cases range from traffic misdemeanors to consumer fraud to capital felonies for which the death penalty is imposed. Florida's courts are vital to maintaining public safety, resolving costly business disputes, and protecting our most vulnerable citizens. Courts touch the lives of our citizens from birth to death.
Now, more than ever before, Florida has a truly unified State Courts System. The July 1, 2004, implementation of the constitutional amendment to article V, known as Revision 7, was the most significant and historic change for Florida's judicial branch since the 1972 revisions to article V. During this past legislative session, the two objectives of the constitutional amendment were fulfilled: the State assumed the greater share of funding for the trial court system, and resource inequities that existed between trial courts in resource rich-counties and counties with small budgets were substantially eliminated.
Prior to the funding of the amendment, it could be argued that two justice systems existed throughout the state: one that was present in counties with a higher local tax base and one that was present in counties with a lesser tax base. Counties with larger tax bases were able to fund necessary support services in the courts, such as hearing officers, general masters, mediation, and case managers. Together, these resources made a qualitative difference in the delivery of justice to those communities. Courts in counties with a lesser tax base did not fare as well prior to the funding of Revision 7. Generally, in those smaller, rural counties there were few supplemental programs and services for citizens using the court system.
To bridge the gap between these "haves" and "have nots," the State Courts System, under the leadership of the Trial Court Budget Commission and the Trial Court Performance and Accountability Commission, worked tirelessly beginning shortly after the 1998 passage of Revision 7 to identify those elements of the court system that were appropriate for state funding. By both codifying and funding the identified elements in every judicial circuit, the Legislature recognized their value to the citizens of Florida. This distribution of resources, with a focus on equity and fairness, has enabled citizens from Pensacola to Key West to access the same system of justice regardless of their location or the size or tax base of the county in which they live. This Court expresses its gratitude to the Legislature for fulfilling the voters' mandate by providing the necessary funding for the implementation of the Revision 7 constitutional amendment.
The funding of Revision 7, while essential to a unified state court system, is only part of the story. The remaining component is the proper funding of new judgeships where a demonstrable need exists. Yet despite the demonstrated judicial need, the funding of new judgeships by the Legislature has fallen short of fulfilling this need over the last several years. This trend, if permitted to continue, could have serious consequences for citizens and businesses throughout the state. Sufficient new judgeships must be funded by the Legislature for Florida to fully realize the promise of a unified state court system. Only with proper funding of the judicial branch, including funding for additional judgeships, can we ensure that our citizens' *737 constitutional right of access to their courts is protected and that disputes are fairly and timely resolved.

TRIAL COURTS
Trial court judges are the foundation of Florida's State Courts System. In fact, almost all (approximately ninety-nine percent) of court filings in Florida are processed by circuit and county judges. Thus, the work of trial judges is vital to our citizens and businesses, who expect our judicial branch to help resolve issues fairly, peaceably, and in a manner that promotes the rule of law.
At the trial court level, this Court has adopted a case-weighting system for certifying the need for additional judges. Our certification is a statement of what the state courts objectively need to meet their workload, using accepted standards of measurement. This system was developed in response to the proviso language of the 1998 General Appropriations Act, in which the Legislature directed that the judicial branch employ a certification methodology that relies on case weights and calculations of available judge time to determine the need for additional trial court judges. Pursuant to this direction, the judicial branch undertook an extensive project to design and implement a weighted caseload system, assisted by the National Center for State Courts and the Office of Program Policy Analysis and Government Accountability.
The case weighting system analysis addresses the differences in the amount of time that must be spent on each case, depending on the case type. We have also adjusted for several factors that impact judicial workload, including differing jury trial rates in each circuit and county and the actual number of judges requested by the chief judge in each circuit.
Despite our use of a methodology that was developed at the direction of the Legislature and that was endorsed by the Office of Program Policy Analysis and Government Accountability,[4] the Legislature has authorized less than twenty percent of the total number of trial court judges certified since the Court began using the new methodology in 2000. No new trial court judges have been funded in the past two legislative sessions. The net result is a growing judicial need in the circuit and county courts.
The decade-long gap between the certified need and the authorization of new judges, and the absence of any new judgeships in the past two years, have resulted in Florida's judges carrying a much higher workload than their peers in other states. Due to tremendous growth, Florida has become the nation's fourth most populous state. Of the ten most populous states, Florida ranks second highest in filings per judge. Remarkably, as of 2002, our general jurisdiction judges handle 46.5 percent more filings than the national average.[5]
In addition, Florida is unique in several ways that affect our judicial system. First, our population swells during the winter months, which produces increased activity of all kinds that impacts judicial workload. Second, the changing demographics of Florida affect our judicial system and strain its capacity. For example, the continued growth of non-English-speaking residents increases the need for court interpreters. Typically, these cases take longer to process and may contribute *738 to delays in case processing times. Likewise, Florida's aging population has resulted in an increase in guardianship, probate, and other cases. Lastly, geographic complexities in multi-county circuits have placed additional workload demands on the circuit courts because of required travel between courthouses.
Analysis of caseloads also reveals increases in certain types of cases in the circuit courts that are more labor intensive and therefore more heavily weighted. Most notable are cases involving murder. From fiscal year 1999-2000 to fiscal year 2002-2003, capital murder cases increased approximately fourteen percent and non-capital murder cases increased approximately thirty-one percent. The case weights for capital and non-capital murder are the highest in the weighted caseload system; accordingly, they have a significant impact on the increased need for judges.
Further exacerbating the need for additional judges is the growth of filings occurring in domestic violence, probate, and the other types of civil cases. Domestic violence cases experienced a nine percent increase from fiscal year 1999-2000 to fiscal year 2002-2003, which continues a trend that began in the early 1990's. In the past decade, there has been a 100 percent increase in domestic violence filings. These cases demand immediate attention and substantial judicial labor. Significant increases in this area may be due to the various statutory changes that have provided greater access to the court system for domestic violence victims seeking injunctions for protection. Furthermore, domestic violence advocates have been successful in encouraging more victims to use the court system to help ensure their safety. Although greater access to justice is critical for both domestic violence victims and for those accused of domestic violence, the ability to dispense justice promptly depends on an adequate number of judges to adjudicate these disputes.
From fiscal year 2001-2002 to fiscal year 2002-2003, every case type in the probate divisions experienced significant increases. Marchman Act[6] cases lead the division with an approximate thirty-one percent increase, while Baker Act[7] cases increased by approximately ten percent. Baker Act case filings are expected to continue this growth trend with the recent legislation creating a new procedure for involuntary outpatient placement. The remaining categories of circuit civil cases, including eminent domain, administrative agency appeals, replevins, and habeas corpus proceedings, experienced a ten percent increase in filings from fiscal year 1999-2000 to fiscal year 2002-2003, and this rate of growth is projected to continue over the next three-year period.
Caseloads in the county courts continue to increase at a rate even greater than those in the circuit courts. Yet the county courts have not received funding for new judgeships in the last three years. Overall, county court filings, excluding civil traffic infractions, increased approximately eleven percent from fiscal year 1999-2000 to fiscal year 2002-2003. In fact, during that time frame, significant increases were experienced in six of the eight county court case types. The County Civil Division had the foremost increases with the small claims, civil (matters involving claims ranging from $5,001 through $15,000), and evictions cases undergoing forty percent, twenty-five percent, and seventeen percent increases in filings, respectively. Under the weighted caseload system, the county *739 civil and small claims cases have the second and fourth highest weights for the county courts.
In addition to the increased number of county civil case filings, these types of cases are generally filed by unrepresented litigants, who are often unfamiliar with statutes, court rules, and court procedures. This increases the amount of judicial time expended on these cases. Other factors impacting the workload of county courts include large increases in population, the necessity for judges and court personnel to travel between branch courthouses, and the construction of branch courthouses in urban counties.[8]
Lastly, the chief judges of the trial courts, as well as other circuit and county judges, have advised us that there are judicial workload concerns resulting from new laws passed by the Legislature. One example is recent legislation that substantially amends chapter 394, Florida Statutes, and expands the circuit courts' role in involuntary mental health placements. The current weighted caseload system does not account for this extra judicial time. Thus, we have filed a legislative budget request for funding to reevaluate the case weights presently being used. This request is consistent with the National Center for State Courts' final report, issued in January 2000, which recommended that the weights be evaluated every five years to preserve the integrity of the system.[9] Factors such as changes in statutes, court rules, legal practices, available technologies, and supplemental resources influence the appropriateness of the case weights. We ask for serious consideration of this request by the Legislature to ensure that our case weights keep pace with new requirements and changing resources.

SUPPLEMENTAL RESOURCES
Supplemental resources are in place to assist our judges in the fundamental mission of safeguarding Floridians' constitutional rights of due process, equal protection, and access to courts. This is accomplished by providing vital assistance to our judges with their caseloads through judicial assistants, case managers, law clerks, and magistrates, by providing for mediation of certain case types to reduce the number of time-consuming trials, and by ensuring the efficient and effective operation of the trial courts through court administration. The Legislature recognized the validity and value of these resources by funding each of these categories of resources as elements of the State Courts System during the 2004 Legislative Session.
The weighted caseload system factors existing supplemental resources into its analysis. Thus, we emphasize that the case weights and the corresponding need *740 for judges would be much higher had those resources not been available or not been considered in the methodology.
Many chief judges have reported the positive effects of these resources in their circuits. With the increase in the use of supplemental resources made possible by Revision 7 funding in circuits where such resources were previously scarce or nonexistent, we stress again the need to conduct a reevaluation of the current weighted caseload system.

REQUESTS FOR JUDGESHIPS
Over the last several years, the chief judges of this state have repeatedly emphasized the need for judicial help in their circuits. We, in turn, have critically reviewed these requests and certified the appropriate number of judgeships to the Legislature. We have been especially concerned with providing an adequate number of judges to hear our family law cases, including juvenile delinquency cases, which demand individual attention at an early stage but which also have the highest cases per judge ratio. Despite a well-documented process for assessing workload, ever increasing caseloads, and repeated certification requests, the Legislature has failed to fund an adequate number of judges for this state.
Each day the circuit and county judges of this state work to dispense justice. In many instances, their workload is well beyond capacity. This workload demand, left unaddressed, affects the timeliness and quality of judges' work. Faced with increasing caseloads, judges are forced to devote less time to each case, resulting in the potential for a diminished quality of justice and a detrimental effect on the rule of law. At the trial court level, this Court and the chief judges of this state know which divisions are in dire need of judicial services. We expressly noted in 2003:
In previous certification opinions, this Court has emphasized the need for the adequate allocation of judicial time and resources for juvenile delinquency and dependency cases. We commend the trial courts for their diligent efforts in responding to that need. Considerable progress has been made, yet more remains to be done. Children are Florida's most precious resource. Children who are involved in the judicial system have special needs, and it is critical that all three branches of government work collaboratively to ensure that cases involving children who are abused, neglected, or delinquent are given sufficient and appropriate judicial attention. Accordingly, we encourage the trial courts to continue their efforts to ensure that adequate judicial resources are devoted to those divisions of the court serving children and families.
In re Certification of Need for Additional Judges, 842 So.2d 100, 103 (Fla.2003) (footnote omitted). We also have every expectation that, if funded, new judgeships will be allocated to those court divisions with the greatest need, and specifically to those divisions comprising the family court (i.e., dissolution of marriage, domestic violence, dependency and delinquency).
After reviewing the requests of the trial courts, and in light of the foregoing considerations, we certify the need for sixty-seven new circuit court judges for fiscal year 2005-2006 as follows:
1. Seven additional circuit judges each for the Fifth, Tenth, and Eleventh Circuits;
2. Six additional circuit judges each for the Thirteenth and Seventeenth Circuits;
3. Five additional circuit judges each for the Sixth and Ninth Circuits;

*741 4. Four additional circuit judges each for the Seventh and Nineteenth Circuits;
5. Three additional circuit judges each for the First and Twentieth Circuits;
6. Two additional circuit judges each for the Second, Fourth, and Eighteenth Circuits; and
7. One additional circuit judge each for the Third, Eighth, Fourteenth, and Fifteenth Circuits.
Further, after reviewing the requests of the trial courts and in light of the above considerations, we certify the need for forty-one new county court judges for fiscal year 2005-2006 as follows:
1. Six additional county judges for Broward County;
2. Four additional county judges each for Pinellas, Hillsborough, and Brevard Counties;
3. Three additional county judges for Orange County;
4. Two additional county judges each for Marion, Pasco, Miami-Dade, Palm Beach, and Collier Counties; and
5. One additional county judge each for Duval, Hernando, Lake, Volusia, Manatee, Bay, Seminole, Martin, Saint Lucie, and Lee Counties.
We have specifically reviewed the requests for two circuit court judges in the Twelfth Circuit, one county judge in Osceola County, one county judge in Columbia County, and one additional county judge in Miami-Dade County. However, we have determined that absent special circumstances we must uniformly deny requests where the net need is less than 0.5.[10] We emphasize that in addition to mathematical calculations, our staff performs extensive analysis of each circuit's request to analyze availability of supplemental resources and any special circumstances justifying an exception. In accordance with these uniform procedures, we decline to certify the remaining requests.
The certification of need for new judges is entirely consistent with the methods used in previous years. More importantly, we would be disregarding our constitutional obligation to certify any fewer than those shown to be justified by the objective method that we employ.

DISTRICT COURTS OF APPEAL
Using the recently approved amended criteria for certifying the need for additional district court judges set forth in Florida Rule of Judicial Administration 2.035(b)(2),[11] we certify the need for one additional district court judge each for the Second and Fifth Districts.
In the future, this Court intends to further evaluate the district court workload through the Committee on District Court of Appeal Workload and Jurisdiction. This committee was established by Administrative Order AOSC04-122 (Sept. 22, 2004) to review appellate court workload issues. The committee is charged with developing recommendations to this Court on uniform criteria as a primary basis for a determination of the need to increase, decrease, or redefine the appellate districts. The committee may also make recommendations concerning district court structure and jurisdiction. In addition, the Commission on District Court of Appeal *742 Performance and Accountability[12] is charged with proposing a process and criteria for determining the resource needs and deployment patterns sufficient to address the workload of the district courts of appeal, including a reexamination of whether the 350-filings-per-judge threshold accurately reflects a basis for certifying the need for additional district court of appeal judges.
Notwithstanding the future work of these bodies, it is apparent that the Second and Fifth Districts presently require additional judges. Statewide, the district courts of appeal recorded an average of approximately 390 case filings per judge in fiscal year 2003-2004. However, for the same time period, the Second District and the Fifth District experienced approximately 416 case filings per judge and 422 case filings per judge, respectively. Despite this significant increase in burden, the number of judges in the district courts has remained constant since the 1999 legislative session,[13] while the number of annual filings has risen steadily. The 24,157 cases filed in the district courts in fiscal year 2003-2004 is an increase of approximately eleven percent over the 21,679 filings for fiscal year 1999-2000.
Since the 1993 legislative session, when the Second District was last authorized two additional judgeships, filings in that court have increased by approximately thirty-two percent. From 1994 forward, the Legislature authorized twenty-five additional circuit judges for the Second District but no new district judges. The current ratio of circuit judges to district judges in the Second District is ten to one and there are 142 circuit judges in the district, more than any other district.
Chief Judge Altenbernd, in his letter of judicial needs, directly addresses this issue:
Over the last fifteen years, I have become more impressed with the direct relationship between the number of circuit court judges in a district and the need for district court judges to review their work. When the ratio is one appellate judge for every eight circuit judges, caseload is very manageable. At 1:9 pressure begins to build. There are fourteen appellate judges in the Second District and 142 circuit judges. At a ratio of 1:10, there is a need for an additional judgeship.
Under these circumstances, this Court is concerned that timely, high-quality appellate review is at risk of being compromised due to a lack of judges to handle the high workload.
The chief judge of the Fifth District notes that workload has increased to a critical level and that delay in receiving judgeships is a matter of great concern in that court as well. The Fifth District is projected to have the highest number of filings per judge, approximately 441, of any of the district courts for fiscal year 2005-2006. The current ratio of circuit judges to district judges in the Fifth District is more than eleven to one, with 111 circuit judges in the district. Traditionally, the Fifth District has resisted adding new judgeships to avoid the costs and other challenges associated with creating larger courts. However, current workload necessitates the request for an additional judgeship.

DISTRICT COURT CERTIFICATION
Given the high caseload, increases in population, and growth in the circuit *743 courts within the Second and Fifth Districts, it is evident that the considerable efficiency measures these districts have implemented are no longer adequate to offset the need for additional judgeships. Accordingly, we certify the need for one additional district court judge each for the Second and Fifth Districts. This certification renews the requests for additional judgeships for these districts that were certified in last year's certification opinion[14] but not authorized by the Legislature.

CONCLUSION
Florida's state courts system is at the dawn of a new era. As a result of the Revision 7 budgetary unification, for the first time in its history, Florida truly has a unified court system. Citizens throughout this great state now have access to justice to an extent previously unavailable in many counties. Florida's courts are bearing an enormous and ever-increasing caseload, but are managing to do so with efficiency and at a minimal cost to the people of Florida. Even after the funding of Revision 7, the State Courts System's budget is less than one percent of the State of Florida's budget. But our courts are reaching a point where the continuing shortage of judges will impact the fair, effective, and timely resolution of disputes. Our judiciary's continuing tradition of excellence depends on an adequate number of judgeships funded by the Legislature.
This opinion fulfills our constitutional mandate to certify those additional judgeships necessary to maintain the fair and timely administration of justice in Florida's State Courts System. We are confident that the Governor and the Legislature will respond to our certification of need. Failure to meet the needs of our courts could have serious consequences for our justice system in this state. We pledge our cooperation in every way to provide information and assistance to our coordinate branches of government to assure the continuation of justice for all Floridians.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Article V, section 9 of the Florida Constitution provides:

Determination of number of judges.  The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits. If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need. Upon receipt of such certificate, the legislature, at the next regular session, shall consider the findings and recommendations and may reject the recommendations or by law implement the recommendations in whole or in part; provided the legislature may create more judicial offices than are recommended by the supreme court or may decrease the number of judicial offices by a greater number than recommended by the court only upon a finding of two-thirds of the membership of both houses of the legislature that such a need exists. A decrease in the number of judges shall be effective only after the expiration of a term. If the supreme court fails to make findings as provided above when need exists, the legislature may by concurrent resolution request the court to certify its findings and recommendations and upon the failure of the court to certify its findings for nine consecutive months, the legislature may, upon a finding of two-thirds of the membership of both houses of the legislature that a need exists, increase or decrease the number of judges or increase, decrease or redefine appellate districts and judicial circuits.
[2] See Fla. R. Jud. Admin. 2.035.
[3] The history of the Weighted Caseload System is detailed in National Center for State Courts, Florida Delphi-Based Weighted Caseload Project: Executive Summary (2000), available at http:// www.floridasupremecou rt.org/pub  info/highprofile/certification.shtml
[4] See Courts Improve Caseload System; Need to Address Supplemental Resources, OPPAGA Information Brief Report No. 99-38, March 2000.
[5] National Center for State Courts, Examining the Work of State Courts, 2003 (Brian J. Ostrom et al. eds., 2004).
[6] See ch. 397, Fla. Stat. (2004).
[7] See ch. 394, Fla. Stat. (2004).
[8] The issue of court access continues to be a primary concern for chief judges and this Court. The building of branch courthouses in urban settings or large counties helps to alleviate the burden of long commutes to courthouses in county seat locations and provide ready access to citizens. Examples of circuits with branch courthouse locations include the Sixth, Seventh, Eleventh, Thirteenth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth Circuits.
[9] The report states:

Recommendation 2: The OSCA should plan to conduct a systematic update of the case weights approximately every five years, depending on the judgment of the Court Statistics and Workload Committee. Funding for this should be part of the regular legislative agenda related to the process of certification of the need for new judgeships.
Brian J. Ostrom et al., Florida Delphi-Based Weighted Caseload Project Final Report 75 (2000), available at http://www.floridasupremecou rt.org/pub  info/highprofile/DelphiFullReport.pdf
[10] Total judicial need is the total number of judges required to complete all expected workload. Net judicial need is the difference between the total judicial need and number of existing judges.
[11] The use of these criteria is provisional. See Amendment to the Fla. Rules of Judicial Admin. (Certification of Judges), 888 So.2d 614, 614-15 (Fla. 2004).
[12] See Administrative Order AOSC04-21 (Sept. 23, 2004).
[13] The Fifth District Court of Appeal received an additional judgeship in 1999.
[14] See In re Certification of Need for Additional Judges, 863 So.2d 1191 (Fla.2003).