PER CURIAM.
This opinion fulfills our constitutional obligation to determine the State’s need for additional judges in Fiscal Year 2014/2015 and to certify our “findings and recommendations concerning such need” to the Legislature.[1] Certification is “the sole mechanism established by our constitution for a systematic and uniform assessment of this need.” In re Certification of Need for Additional Judges, 889 So.2d 734, 735 (Fla.2004). In this opinion we are certifying a total need of forty-nine judges, forty-six in the trial courts and three in the appellate courts as further elaborated below.
TRIAL COURTS
The Florida Supreme Court continues to use a weighted caseload system as a primary basis for assessing judicial need for the trial courts.[2] Using objective standards, this Court has examined case filing and disposition data, analyzed various judicial workload indicators, applied a three- *162 year average net need, and considered judgeship requests submitted by the lower courts. Applying this methodology, this Court certifies the need for forty-six judgeships statewide, seven of which are in circuit court and thirty-nine in county court as detailed in the attached appendix. As noted in previous opinions, our judges and court staff continue to work diligently to administer justice, promptly resolve disputes, and ensure that children, families, and businesses receive the proper amount of judicial attention for their cases. They do so despite a demonstrated need for new judges and with a smaller staffing complement.
Our most recent analysis of statistics from Fiscal Year 2010/2011 to Fiscal Year 2012/2013 indicates a slight increase in circuit civil filings and a six percent increase in probate filings. At the same time, felony and juvenile dependency filings declined by five percent while domestic relations and juvenile delinquency filings experienced a seventeen percent decline. Although it may be too soon to indicate a sustained downward trend for most of these case types, recent juvenile justice reforms undertaken by the Florida Department of Juvenile Justice may continue to result in fewer juvenile delinquency filings.[3]
Notwithstanding the decreases to most filing categories, our three-year average net need analysis continues to indicate that additional judgeships are necessary in our circuit courts. This three-year average net need reflects sustained workload over a multi-year period.
Several of the chief judges reference high jury trial rates, substantial pending caseloads and reduced clearance rates as workload trends that continue to impact the trial courts. In addition, seasoned judges throughout the state continue to report to the court that statutory revisions requiring additional hearings for certain case types contribute to case complexity and additional judicial workload. Some chief judges also note the effect of self-represented litigants on court time and resources, factors that contribute to judicial workload and court delay. This Court is carefully monitoring such feedback and will apprise the Legislature of any updated findings to its workload evaluation model.
Many of our chief judges lament the long waits associated with obtaining hearing times. In some circuits, dockets are so full that it takes several weeks to schedule a hearing. This is especially true for scheduling lengthy hearings. Similarly, judges must schedule lengthy jury trials months in advance. Judges continue to report to their chief judges that they are less able to devote adequate time to hearings due to their overall workload. This observation is of particular concern as it strikes at the essence of access to the courts as well as public trust and confidence in our courts.
Our judges continue to absorb the work previously performed by case managers, law clerks, magistrates, and other supplemental support staff lost in the budget reductions of recent years.[4] Most of these positions provided direct case management, legal research, and adjudicatory support to our judges. The consensus among chief judges is that the loss of *163 support staff translates into slower case processing times, crowded dockets, and long waits to access judicial calendars.
Workload associated with the mortgage foreclosure crisis continues to impact disposition times and rates in our circuit civil divisions. In recognition of this protracted crisis the Legislature, using monies from the national mortgage foreclosure settlement,[5] has provided dedicated funding for Fiscal Year 2013/2014 and Fiscal Year 2014/2015 that has enabled the court system to secure the services of additional senior judges and magistrates for additional docket time, necessary case management resources, and to deploy technology resources to provide for more efficient and effective management of cases. The Court is grateful for this funding to address the temporary but prolonged spike in foreclosure filings in Florida. Because the current foreclosure activity is known to be temporary, the Court is relying on these additional resources from the Legislature for enhanced judicial capacity, and does not calculate the excess foreclosure filings in this certification of judicial need.
County court workload remains high with judicial need holding steady. In select counties, some chief judges report that misdemeanor, domestic and stalking violence cases are increasing county court workload. The reduction of civil traffic infraction hearing officers in county court coupled with new workload associated with red light camera cases continue to increase county judge workload. These factors contribute to a high county court judicial need.
Self-represented litigants continue to impact county courts as they do circuit courts. Frequently, self-represented litigants are unprepared for the rigors of presenting evidence, following rules of procedure, and generally representing themselves in court. Consequently, they often require enhanced judicial involvement, which entails lengthier hearings, rescheduled hearings, and court delay.
DISTRICT COURTS OF APPEAL
The Second District Court of Appeal requests two additional judgeships, citing its current averaged weighted judicial workload of 325 cases per judge and Florida Rule of Judicial Administration 2.240(b)(2)(B), which provides that a presumption of need arises “where the relative weight of cases disposed on the merits per judge would have exceeded 280 after application of the proposed additional judge(s).” As with last year’s opinion, we have used a three-year average of weighted dispositions on the merits per judge which is consistent with our discretion under Florida Rule of Judicial Administration 2.240.
A number of factors contribute to the overall high workload in the Second District, including the fact that civil filings have increased seventeen percent in the last five years. Further, their relative weighted judicial workload per judge has increased by twenty-one percent in the last five years.
The chief judge of the Second District notes that the statistics for average pending cases per month demonstrate that in spite of its increased clearance rate and a reduction in the number of filings, the Second District continues to maintain the highest number of pending cases per judge. Further, the chief judge notes, and we agree, that backlog is more than a statistic. It means that parties wait longer for finality. Divorces and foreclosures take longer to dispose. Business litigation takes longer. We agree with the chief *164 judge’s conclusion that “this scenario is not good for families and it is not good for business.”
The Fifth District Court of Appeal requests one additional judgeship. The chief judge of the Fifth District observes that the average number of cases per judge in his court (330) is the highest in the state. The Fifth District is the only district court in the state that has experienced a net increase in total ease filings for the period of 2008 to 2013. It also has the highest number of trial court felony filings and the highest number of prison admissions on a per judge basis of any of the district courts. The chief judge also notes that “even with the implementation of creative methods of case management, with available resources, we have been unable to avoid a declining clearance rate and a decline in timeliness of our case dispositions.”
Given the factors cited above, we certify the need for two additional district court judges in the Second District and one additional district court judge in the Fifth District for Fiscal Year 2014/2015.
CONCLUSION
We have conducted both quantitative and qualitative assessments of judicial workload. Using the case weighted methodology and the application of other factors identified in Florida Rule of Judicial Administration 2.240, we certify the need for forty-six additional trial court judges in Florida, consisting of seven in circuit court and thirty-nine in county court, as set forth in the appendix to this opinion, and three additional district court judges, two
in the Second District and one in the Fifth District Court of Appeal.
We are straining judicial capacity in both the Second and Fifth Districts. We continue to monitor the downward filing trends for multiple trial court divisions. At this juncture, it is too early to determine whether those trends will continue to decline or whether they will normalize (i.e., level off) in the next year or two. Accordingly, this certification request is conservative, in that we are requesting the minimum number of trial and district judges necessary to stay abreast of documented workload.
We appreciate the continued support of the Legislature in funding court operations and providing resources to address foreclosure case backlog issues. As our state economy emerges from recession, we continue to prioritize and triage our needs and requests acknowledging the economic reality of our time. Although constitutionally required to certify judicial need, we are mindful of the competing funding needs within state government. On balance, we ask that priority funding consideration be given to issues requested in the Judicial Branch’s Fiscal Year 2014/2015 Legislative Budget Request.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.
APPENDIX
Trial Court Need Circuit
Circuit Court County Court
Circuit Certified Judges County_Certified Judges
1_2_NA_0
2 0 NA 0
*165 3 0 NA
4 0 Duval
Citrus
Lake
Marion
NA
Flagler
Volusia
NA
Orange
Osceola
10 NA
11 Miami-Dade 11
12 Manatee
Sarasota
13 Hillsborough
14 Bay
15 Palm Beach
16 NA
17 Broward
18 Seminole
19 N/A
20 Lee
Total Total 39

. Article V, section 9 of the Florida Constitution provides in pertinent part:
Determination of number of judges. — The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits. If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.

. Our certification methodology relies primarily on case weights and calculations of available judge time to determine the need for additional trial court judges. See Fla. R. Jud. Admin. 2.240.

. See Rick Scott, Governor of Florida, Reform Underway at Florida’s Juvenile Justice Agency (January 3, 2012), available online at http://www.flgov.com/2012/01/03/reform-underway-at-fIoridaS%crs-juvenile-justice-agency/.

. When the case weights were originally developed in 1999 and updated in 2007, they incorporated the availability of supplemental resources to assist judges with case processing matters.

. This program is commonly known as the Foreclosure Backlog Reduction Initiative.