# Supreme Court of Florida

_____

No. SC22-1621

_____

## IN RE: CERTIFICATION OF NEED
## FOR ADDITIONAL JUDGES.

December 22, 2022

PER CURIAM.

This opinion fulfills our constitutional obligation to determine the State's need to increase or decrease the number of judges in fiscal year 2023-24 and to certify our "findings and recommendations concerning such need" to the Florida Legislature.[1] Certification is "the sole mechanism established by

---

1. Article V, section 9 of the Florida Constitution provides in pertinent part:

> **Determination of number of judges.**—The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing, or redefining appellate districts and judicial circuits. If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the

our constitution for a systematic and uniform assessment of this need." *In re Certif. of Need for Addt'l Judges*, 889 So. 2d 734, 735 (Fla. 2004).

In this opinion, we certify no need for additional county court, circuit court, or district court of appeal judgeships. We certify the need to decrease by one the number of county court judgeships in Brevard County, and we certify that there is no need to decrease the number of circuit court judgeships. Additionally, we acknowledge excess judicial capacity in the First District Court of Appeal and the Second District Court of Appeal resulting from recently enacted changes to the jurisdictional boundaries of appellate districts and the policy in that law (recommended by the Court and adopted by the Legislature) of allowing a judge to continue to serve in the district where the judge resided. As we explain, the Court recommends that the Legislature address this excess appellate judicial capacity over time by reducing the number of statutorily authorized judgeships based on attrition, without requiring a judge

---

legislature, certify to the legislature its findings and recommendations concerning such need.

to vacate his or her position involuntarily. This recommendation is consistent with the approach the Court recommended last year in its opinion on the need to create an additional district court of appeal. *In re Redefinition of App. Dists. & Certif. of Need for Addt'l App. Judges*, 345 So. 3d 703, 706 (Fla. 2021).

## Trial Courts

The Court continues to use a verified, objective weighted caseload methodology as a primary basis for assessing judicial need for the trial courts.[2] The lower courts submit judgeship requests that supplement the objective data, including descriptions of how secondary factors are affecting those courts. The secondary factors identified by each chief judge reflect local differences in support of their requests for more judgeships or in support of their requests for this Court not to certify the need to decrease judgeships in

---

2. Our certification methodology relies primarily on case weights and calculations of available judge time to determine the need for additional trial court judges. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.240.

situations in which the objective case weights alone would indicate excess judicial capacity.

Based on the analysis under this two-step methodology, we conclude that there is no demonstrable need for an additional circuit court or county court judgeship.[3]  Considered in isolation, the two-step analysis suggested certifying no need to decrease circuit court judgeships and certifying the need to decrease two county court judgeships in Brevard County and one county court judgeship each in Alachua, Collier, and Monroe counties.  However, the Court determines that other relevant circumstances further explained below, coupled with the secondary-factor analysis, militate against certifying the need to decrease all but one of those county court judgeships.

Under Florida Rule of General Practice and Judicial Administration 2.240, the Commission on Trial Court Performance and Accountability is responsible for reviewing the trial court

---

3. Applying the weighted caseload methodology, only Nassau County would appear to be eligible for an additional county court judgeship.  However, if the Court were to certify the need for that judgeship, the county would immediately fall below the workload threshold suggesting the need to decrease that same judgeship.

workload trends and case weights and considering adjustments every five years. The current cycle of workload trend and case weight review began in Florida's trial courts in December 2022 and will conclude by June 2024. The statewide effort involves an assessment of the workload of all trial court judges and will consider the contributions of all quasi-judicial officers such as senior judges, magistrates, child support enforcement hearing officers, and civil traffic infraction hearing officers. The workload assessment is comprehensive and will be carefully validated.

Several chief judges have commented on the importance of updating the current case weights in order to capture a more complete picture of case complexity addressed by trial court judges. Since the last workload assessment and case weight update in 2016, state laws have changed significantly, affecting the courts' work in interpreting and applying those laws. Further, court operations have changed significantly, such as through the rapid deployment of remote technology as a result of the Coronavirus Disease 2019 pandemic (COVID-19). We agree with the chief judges' observations that these and other developments warrant

reevaluation of the case weights that are the foundation of this Court's evaluation of judicial workload.

In addition, the lingering impact of workload stemming from COVID-19 limits our ability to accurately project judicial need and further militates against certifying the need to decrease trial court judgeships. Notwithstanding significant progress in addressing pandemic-related workload, it is estimated the trial courts will be facing more than 210,000 pending cases above normal on July 1, 2023. As reflected in the State Courts System's fiscal year 2023-24 legislative budget request, the Trial Court Budget Commission has identified the need for temporary adjudicatory and case support resources to address this workload. This third and final year of the pandemic recovery plan, if funded, will provide Other Personal Services (OPS) general magistrates, case managers, and staff attorneys; facilitate additional use of senior judges; and expand mediation services to help address increased workload caused by COVID-19. The trial courts' existing judicial resources are the frontline of this pandemic-recovery effort.

Further, chapter 2019-58, section 9, Laws of Florida, increased the dollar amount threshold for the jurisdiction of the

county court. The Legislature elected to adopt a phased approach in the implementation of this statutory revision. Effective January 1, 2020, county court monetary jurisdiction increased from an upper limit of $15,000 to $30,000, and it will increase to $50,000 on January 1, 2023. The jurisdictional expansion in county court can reasonably be expected to increase workload in the county courts.

The Court also considered other significant factors such as the anticipated cases resulting from Hurricane Ian and Hurricane Nicole, the continued expansion of drug courts and other problem-solving courts and the increased judicial time associated with those dockets, and judicial time related to the implementation of the civil case management requirements that initially went into effect in *In re Comprehensive COVID-19 Emergency Measures for Florida Trial Courts*, Florida Administrative Order No. AOSC20-23, Amendment 10[4] (March 9, 2021). These factors also contributed to the Court's

---

4. The requirements are now found in *In re COVID-19 Health and Safety Protocols and Emergency Operational Measures for Florida Appellate and Trial Courts*, Florida Administrative Order No. AOSC21-17, Amendment 3 (Jan. 8, 2022).

cautious approach to certifying the need to decrease trial court judgeships.

Mindful of these considerations, the Court does not recommend decreasing the number of county court judges in Alachua, Collier, or Monroe counties. The Court does, however, recommend a decrease of one county judgeship in Brevard County. We base this recommendation on a demonstrated, multi-year trend of excess judicial capacity in that county.

**District Courts of Appeal**

In furtherance of our constitutional obligation to determine the State's need for additional judges in fiscal year 2023-24,[5] this opinion certifies the need for no additional district court judgeships. The Court recognizes excess judicial capacity in the First District and the Second District based on the addition of a sixth district effective January 1, 2023, along with corresponding jurisdictional boundary changes in three existing districts. However, the Court continues to recommend that this excess capacity be addressed

---

5. *See* s*upra* note 1.

over time through attrition and therefore is not certifying the need to decrease any district court judgeships.

In September 2021, the District Court of Appeal Workload and Jurisdiction Assessment Committee determined that a sixth appellate district should be created in Florida and that accompanying changes should be made to the existing boundaries of the First, Second, and Fifth districts. The Committee further recommended that no existing district court judge's position be certified for elimination while that judge is in office and that no existing district court judge should have to change residence in order to remain in office as a result of the realignment of districts. In its fiscal year 2022-23 certification opinion, the Court concurred with the Committee's recommendation, stating:

> The Court concurs with the Committee's recommendation that realignment of districts not result in decertification of judges or a requirement for judges to change their residence in order to remain in office. . . .
>
> . . . .
>
> Further, the Court recommends that the legislation implementing the territorial jurisdiction changes specify that vacancies will not be deemed to occur as a result of the changes and recommends that excess judicial capacity in a given district court be addressed over time through attrition, as guided by this Court's annual

- 9 -

certification of the need for additional appellate judges. The creation of an additional district and changes to the territorial boundaries of other districts are milestone events that have not occurred since the creation of the Fifth District Court of Appeal in 1979. It will take some time to fully assess the impact of these changes on workload and judicial need for any given court and statewide.

*In re Redefinition of App. Dists. & Certif. of Need for Addt'l App. Judges*, 345 So. 3d at 706.

The law creating a sixth district court of appeal and realigning the boundaries of the existing First, Second, and Fifth districts embodied this policy by specifying, in part:

No judicial vacancy may be deemed to occur as a result of the addition of a sixth appellate district or district realignment under this act. Effective January 1, 2023, a current district court of appeal judge residing in a county, the district of which is realigned under this act, shall be a district court of appeal judge of the new district where he or she resided on December 22, 2021.

Ch. 2022-163, § 15, Laws of Fla.

Based on the workload analysis the Court conducted for this first certification since the creation of a sixth district court of appeal, we have determined that there is an estimated excess capacity of one judgeship in the First District and three judgeships in the Second District. To address this situation, this Court

- 10 -

recommends that during the 2023 Regular Session the Legislature consider enacting legislation that provides for reduction in the number of statutorily authorized district court judgeships based on attrition and without requiring a judge to vacate his or her position involuntarily.  Such legislation could specify that, upon each occurrence of an event that otherwise would have resulted in a vacancy in the office of judge of the First District or Second District, the number of authorized judges shall be reduced by one, until a specified number of judges remain on each court; we recommend that eventually, after attrition, there be 12 judges authorized for each of those courts.  The goal of the Court's recommended approach, consistent with last year's opinion on the creation of a new district court of appeal, is to address excess district court judicial capacity without prematurely ending an existing judge's judicial career.

The Court continues to use a verified, objective weighted caseload methodology as a primary basis for assessing judicial need in the district courts of appeal,[6] as well as considering qualitative

_____

6. Our certification methodology relies primarily on the relative weight of cases disposed on the merits to determine the

- 11 -

factors and other factors analogous to those it considers in assessing trial court workload. Based on that analysis, the Court does not certify the need to decrease judgeships in the district courts of appeal at this time. The Court does, however, recommend addressing excess judicial capacity in the First and Second Districts in the manner described above.

Notwithstanding legislative enactment of a statutory framework using attrition in the First District and Second District to rectify present excess capacity, the Court will continue to fulfill its constitutional obligation to determine the State's need for additional appellate judges among all six districts and to certify its recommendations concerning such need to the Legislature. As the Court noted in its certification opinion for fiscal year 2022-23, it will take some time to assess fully the effect of the jurisdictional boundary changes on workload and judicial need for any given district court and statewide. *In re Redefinition of App. Dists. & Certif. of Need for Addt'l App. Judges*, 345 So. 3d at 706.

---

need for additional district court judges. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.240.

## Conclusion

We have conducted quantitative and qualitative assessments of trial court and appellate court judicial workloads. Using the case-weighted methodology and the application of other factors identified in Florida Rule of General Practice and Judicial Administration 2.240, we certify the need for no additional trial court judgeships in Florida. We recommend a decrease of one county court judgeship in Brevard County. We certify no need for additional judgeships in the district courts of appeal. Finally, we recommend legislation to reduce the number of statutorily authorized judgeships in the First District and the Second District based on attrition and without requiring a judge to vacate his or her position involuntarily, as noted in this certification.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, LABARGA, and COURIEL, JJ., concur.
GROSSHANS, J., concurs in part and dissents in part with an opinion.
FRANCIS, J., did not participate.

GROSSHANS, J., concurring in part and dissenting in part.

I agree with the majority's opinion except in one respect—that is, the decision to decrease one county court judgeship in Brevard

- 13 -

County.  In my view, the reasons given by the majority as support for not decreasing county court judgeships in three other counties weigh in favor of retaining the current number of county judgeships in Brevard County as well.  I stress in particular the uncertainty in projecting judicial need following the COVID-19 pandemic and the acknowledged necessity of updating current case weights to accurately reflect case complexity and judicial workload—including the valuable time that county court judges expend in circuit court roles.  I do not believe that the "multi-year trend" on which the majority relies, *see* majority op. at 8, negates the many substantial reasons for retaining the current number of county judgeships in Brevard County for now.

Accordingly, I respectfully dissent from the portion of the majority decision recommending a decrease of one county court judgeship in Brevard County.  I concur in all other respects.
Original Proceeding – Certification of Need for Additional Judges