PER CURIAM.
This opinion fulfills our constitutional obligation to determine the State’s need for additional judges in Fiscal Year 2011/2012 and to certify our “findings and recommendations concerning such need” to the Legislature.[1] Certification is “the sole mechanism established by our constitution for a systematic and uniform assessment of this need.” In re Certification of Need for Additional Judges, 889 So.2d 734, 735 (Fla.2004).
TRIAL COURTS
The Florida Supreme Court continues to use a weighted caseload system as a primary basis for assessing judicial need for the trial courts.[2] Using objective standards, this Court has examined case filing and disposition data, analyzed various judicial workload indicators, applied a sustained net need analysis, and considered judgeship requests submitted by the lower courts. Applying this methodology, this Court certifies the need for eighty additional trial court judgeships statewide, twenty-six in circuit court and fifty-four in county court.[3]
As we make this certification, we also are aware that difficulties in our economic situation continue to have a severe impact on both the private and public sectors in Florida. With over one million Floridians unemployed and significant deficits in the state budget, we recognize that funding new judgeships will compete with other critical state priorities. Nonetheless, the reality is that Florida’s circuit and county judges are overloaded with new filings, have substantial caseloads, and have fewer support staff to assist with the disposition of cases. Taken together, these factors continue to hamper the effective administration of justice in Florida.
The trial court chief judges have provided us with ample justification to certify new judgeships to the Legislature. First, the chief judges have identified a number of workload trends that are affecting court operations throughout the state. Several chief judges have cited filing increases across multiple divisions, slower case processing times, increases in pending caseloads, and higher jury trial rates. Dropping clearance rates, a key barometer of the relationship between court filings and dispositions, were also cited by many chief judges.
*956 Second, the ongoing challenges to state government associated with the current economic crisis have resulted in considerable reductions in trial court funding. Trial court expense budgets and support staff have been significantly reduced. Judges are absorbing the work previously performed by magistrates, law clerks, case managers, and other supplemental support staff lost in the budget reductions of the last several years. As noted in last year’s certification opinion,[4] we have lost a total of 249 trial court staff positions due to reductions to our budget. Most of these positions provided direct case management, legal research, and adjudicatory support to our judges. The loss of staff translates into slower case processing times, crowded dockets, and long waits to access judicial calendars. Another consequence of high caseloads and reduced staff support is less judicial time spent on hearings. Some of our judges believe that the quality of justice being delivered today is suffering because they do not have adequate time to devote to each case. We find that observation troubling. Over time, these factors can result in a weakening of the effective administration of justice throughout the state.
Third, several of the trial court chief judges also note the significant increases in pro se (i.e., self-represented litigants) filings for multiple divisions of court. This observation is not surprising given the state of our economy. Many citizens cannot afford to hire an attorney and choose to represent themselves in court. Pro se litigants are often unprepared for the rigors of presenting evidence, following rules of procedure, and representing themselves in court. Cases involving pro se litigants frequently require enhanced judicial involvement which entails lengthier or rescheduled hearings, which can result in litigant frustration and court delay.
Fourth, the mortgage foreclosure crisis continues to challenge every judicial circuit in Florida. The attendant workload associated with the total volume of foreclosure filings far outweighs current judicial capacity, notwithstanding the additional senior judge and case manager resources provided by the Legislature to assist with this crisis.
And fifth, the loss of the civil traffic infraction hearing officers in county court continues to impact county judges throughout the state. In many counties, county judges are hearing traffic cases previously processed by these hearing officers. This additional workload greatly expands county court dockets, creating case processing delays. As we have noted in previous certification opinions, having county court judges perform work that could be processed by civil traffic infraction hearing officers is not the best use of valuable judicial time.
Trial court judges have responded admirably by doing more with less and staying focused on managing their caseloads using available resources. Where possible, they have sought efficiencies by applying various management techniques such as differentiated case management, alternative dispute resolution, jury selection backup during trial weeks, and improved scheduling and calendaring. Their unwavering commitment to advancing the administration of justice during these difficult economic times is laudable, and we commend them.
The Court also takes notice that while the trial courts have identified their need for the additional supplemental resources necessary to ensure the efficient and effective flow of cases, their legislative budget request to the Legislature for Fiscal Year 2011/2012 was significantly scaled back due to the forecasted revenue deficits the State *957 is facing. The Court would support a request for additional resources and, at the very least, the restoration of lost resources in the lower courts but respects the trial courts’ willingness to continue to make do with less in acknowledgment of the tremendous demands on state government.
DISTRICT COURTS OF APPEAL
No district court of appeal requested additional judgeships for Fiscal Year' 2011/2012. Consequently, the Court is not addressing the need for additional district court judges in this opinion.
CONCLUSION
We have conducted both a quantitative and qualitative assessment of judicial workload. Using the case weighted methodology required by the Legislature and the application of other factors identified in Florida Rule of Judicial Administration 2.240, we certify the need for eighty additional trial court judges in Florida. At the same time, we recognize that our State is caught in a period of protracted economic difficulties which are impacting all sectors of state government and that the Legislature will be confronted with extraordinarily challenging funding decisions in the upcoming session. We are hopeful, however, that the demonstrated need for additional judges in Florida can be addressed when the State’s fiscal condition improves.
In the difficult fiscal circumstances confronting the Legislature, we respectfully urge that the Legislature consider the priority of maintaining adequate funding for the courts which provide justice for the people of Florida.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
*958 APPENDIX
[[Image here]]

.Article V, section 9 of the Florida Constitution provides in pertinent part:
Determination of number of judges.— The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits. If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.

. Our certification methodology relies primarily on case weights and calculations of available judge time to determine the need for additional trial court judges. See Fla. R. Jud. Admin. 2.240.

. The needed judgeships in the circuit and county courts are set forth in the table in the attached appendix.

. In re Certification of Need for Additional Judges, 29 So.3d 1110 (Fla.2010).