PER CURIAM.
This opinion fulfills our constitutional obligation to determine the State’s need for additional judges in Fiscal Year 2012/2013 and to certify our “findings and recommendations concerning such need” to the Legislature.[1] Certification is “the sole mechanism established by our constitution for a systematic and uniform assessment of this need.” In re Certification of Need for Additional Judges, 889 So.2d 734, 735 (Fla.2004).
TRIAL COURTS
The Florida Supreme Court continues to use a weighted caseload system as a primary basis for assessing judicial need for the trial courts.[2] Using objective standards, this Court has examined case filing and disposition data, analyzed various judicial workload indicators, applied a three-year average net need, and considered judgeship requests submitted by the lower courts. As part of our ongoing effort to carefully evaluate judicial workload and within our discretion pursuant to Florida Rule of Judicial Administration 2.240, we have slightly modified our methodology this year, using a three-year average net need rather than the sustained net judicial need based on the lowest need for the prior three years. We believe that this modification to our methodology more accurately reflects the net judicial need from year to year.
Applying this methodology, this Court certifies the need for seventy-one judge-ships statewide, twenty-three of which are in circuit court and forty-eight in county court.
We submit this certification recognizing the economic difficulties that continue to affect both the private sector and the public sector in Florida. Further, we acknowledge that state general revenues remain low, thereby creating competition between funding new judgeships and other critical state needs. Yet, as we noted in last year’s certification opinion,[3] our judges and court staff continue to work diligently to ensure the administration of justice and the timely resolution of disputes. They do so despite a demonstrated net need for new judges and with fewer support staff.
Our analysis indicates that felony, delinquency, and civil filings have decreased in *933 circuit court relative to previous years. The drop in felony and delinquency filings correlates with fewer arrests being made as reported by the Florida Department of Law Enforcement. The drop in circuit civil filings is primarily attributable to the self-imposed moratorium on residential mortgage foreclosures by various lending institutions. However, mortgage foreclosure filings are projected to increase in the coming months. Notwithstanding the decreases to certain filing categories, our three-year average net need analysis indicates that additional judgeships are necessary in our circuit courts. This three-year average net need reflects accumulated workload over a multi-year period.
Chief judges have identified a number of the workload trends that are affecting court operations throughout the state. Several of the chief judges cited low clearance rates, substantial pending caseloads, high jury trial rates, fewer staff to assist with case processing matters, and statutory requirements requiring additional hearings for certain case types in civil, criminal, and family law as contributing to judicial workloads. Others note the protracted delays experienced by parties in scheduling hearings along with the impact of self-represented litigants on court time and resources. Collectively, these factors contribute to court delay.
Our judges continue to absorb the work previously performed by magistrates, law clerks, case managers, and other supplemental support staff lost in the budget reductions of the last several years.[4] Most of these positions provided direct case management, legal research, and adjudicatory support to our judges. Chief judges have advised us that the loss of support staff translates into slower case processing times, crowded dockets, and long waits to access judicial calendars. Restoration of case processing support staff lost in the budget reductions over the last three years remains a priority for the judicial branch. Accordingly, we fully support the trial courts’ Fiscal Year 2012/2013 Legislative Budget Request that seeks additional funding for case managers, general magistrates, and law clerks,[5] as these positions are integral to case disposition, docket management, and pending caseload reduction.
Several of our chief judges noted the long waits associated with obtaining hearing times. In some jurisdictions, dockets are so full that it takes several weeks to schedule a hearing. Similarly, lengthy jury trials must be scheduled months in advance. These conditions are additional indicators of an under-resourced court system. This situation frustrates all who use the courts, .especially litigants, their lawyers, and our judges. Chief judges continue to report concerns that judges are unable to devote sufficient time to hearings due to significant workload.
The circuits have responded admirably to changing circumstances bearing on caseloads, including case complexity, demographics, and other factors within their jurisdictions. Where appropriate, the circuits continue to use mediation and differ *934 entiated ease management techniques to address workload. Moreover, as the complexity of Florida’s caseload increases, many jurisdictions have chosen to respond by instituting specialized court dockets. These include juvenile and adult drug courts; veterans’ courts; those dealing with probate, elder, and mental health proceedings; and tobacco cases, asbestos cases, and other complex cases.
Workload associated with the residential mortgage foreclosure crisis continues to impede disposition times and rates in our circuit civil division. The Court is grateful to the Legislature for funding the Foreclosure and Economic Recovery Initiative, which terminated on June 30, 2011. The case managers and senior judges used in the Foreclosure and Economic Recovery Initiative made a significant difference in reducing backlog throughout the state. Unfortunately, due to the severity and protracted nature of the crisis, our trial courts continue to struggle with heavy pending caseloads and the slow resurgence of foreclosure filings. The absence of additional case processing resources, such as case managers and senior judges, will continue to delay case processing times and pending caseloads in our civil divisions for the foreseeable future. Moreover, this crisis has a ripple effect on the workload of other court divisions as chief judges and administrative judges allocate limited court resources to address demand.
County court workload continues to increase in several areas, including evictions and landlord/tenant cases. In select jurisdictions, some chief judges report that personal injury protection and credit card debt cases are impacting county court workload.
The loss of civil traffic infraction hearing officers in county court continues to have an impact on county judge workload throughout the state. In many counties, county judges are hearing traffic cases previously processed by the civil traffic infraction hearing officers.
Self-represented litigants continue to affect Florida’s court system. All circuit and county civil divisions are experiencing an increase in self-represented litigants. Frequently, self-represented litigants are unprepared for the rigors of presenting evidence, following rules of procedure, and generally representing themselves in court. Consequently, they often require enhanced judicial involvement, which entails lengthier hearings, rescheduled hearings, and court delay.
DISTRICT COURTS OF APPEAL
The Second District Court of Appeal requests two additional judgeships. That court cites to its workload and Florida Rule of Judicial Administration 2.240(b)(2)(B), which provides that a presumption of need arises “where the relative weight of cases disposed on the merits per judge would have exceeded 280 after application of the proposed additional judge(s).” Using our discretion under Florida Rule of Judicial Administration 2.240 and as part of our ongoing effort to carefully evaluate judicial workload, we have slightly modified our methodology this year for the district courts, using a three-year average of weighted dispositions per judge. We believe that this modification to our methodology more accurately reflects the net judicial need from year to year.
A number of factors are impacting the overall workload in the Second District, including changes in statutes requiring appellate review and clarification, changes in criminal and sentencing statutes, and growth in prison population and postcon-viction motions. Other factors impacting case processing include the unavailability of senior judges and fewer central staff *935 attorneys to assist the judges with legal research and related case processing matters due to budget reductions. Of particular concern to this Court is the observation by the Chief Judge of the Second District that although the district has been able to maintain high clearance and disposition rates, it does so at the expense of time dedicated to a given case.
The Chief Judge of the Second District also cites to two qualitative factors contained in Florida Rule of Judicial Administration 2.240: effectiveness and professionalism. Effectiveness means that each appellate court judge must have adequate time to review and consider briefs, petitions, motions, and memoranda to fully research legal issues, write opinions, and review all decisions by the court. Given their current workload, the judges in the Second District find themselves increasingly challenged to fully meet the rigors of the effectiveness standard.
The professionalism factors of the rule speak to judicial participation in activities designed to enhance lawyer and judicial professionalism, improve the administration of justice, and improve relations between the bench and bar. The Second District notes that high workloads and reduced resources continue to adversely affect its judges’ ability to meet this standard.
While the Second District Court of Appeal has requested that two additional district court judges be certified, our analysis of the three-year weighted dispositions per judge average indicates that they do not meet the threshold of 280 weighted dispositions per judge after a second judge is added. Therefore, we certify the need for one additional district court judge in the Second District for Fiscal Year 2012/2013.
CONCLUSION
We have conducted both a quantitative and qualitative assessment of judicial workload. Using the case weighted methodology required by the Legislature and the application of other factors identified in Florida Rule of Judicial Administration 2.240, we certify the need for seventy-one additional trial court judges in Florida, consisting of twenty-three in circuit court and forty-eight in county court, as set forth in the appendix to this opinion, and one additional district court judge in the Second District Court of Appeal.
Many of the workload trends we identified in last year’s certification opinion remain today. In response, our courts continue to proactively manage their dockets to ensure that the administration of justice is not diminished. Yet despite these measures, we remain concerned that the timeliness and quality of justice are being adversely affected.
As we certify the need for new judge-ships, we also observe that the last year has proven very difficult for Florida’s State Court System due to the depletion of funds in the State Courts Revenue Trust Fund in the spring. While the State Courts Revenue Trust Fund was created by the Legislature to address funding issues in the court system, it has proven insufficient to sustain funding for the judicial branch. To address this deficiency, the Legislature directed the state courts, pursuant to Specific Appropriation 2986 in the 2011 General Appropriations Act,[6] to work with the clerks of court to identify appropriate and sufficient funding streams for both the court system and the clerks of court. Those recommendations have been submitted to the Legislature.
*936 We recognize that the funding of new judgeships is an expensive proposition, especially during difficult economic times with diminished state revenues. If monies become available, we encourage the Legislature to give priority consideration to funding the trial courts’ Fiscal Year 2012/2013 Legislative Budget Request for positions to assist with case processing (i.e., case managers, law clerks, and magistrates).
It is so ordered.
CANADY, C.J., and LEWIS, PARIENTE, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
APPENDIX
Trial Court Need
Circuit Court County Court
Circuit Certified Judges County Certified Judges
NA 0
0 NA 0
NA
Duval
Citrus
Lake
Marion
NA
Flagler
St. Johns
Volusia
NA
Orange
Osceola
10 Polk
11 Miami-Dade 10
12 Manatee
Sarasota
13 Hillsborough
14 Bay
15 Palm Beach
16 NA
17 Broward
18 Seminole
19 St. Lucie
20 Lee
Total 23 Total 48

.Article V, section 9 of die Florida Constitution provides in pertinent part:
Determination of number of judges.— The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits. If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.

. Our certification methodology relies primarily on case weights and calculations of available judge time to determine the need for additional trial court judges. See Fla. R. Jud. Admin. 2.240.

. In re Certification of Need for Additional Judges, 60 So.3d 955 (Fla.2011).

. It is important to note that when the case weights were originally developed in 1999 and updated in 2007, they incorporated the availability of supplemental resources to assist judges with case processing matters. It is reasonable to conclude that the loss of these supplemental positions (i.e., case managers, law clerks, and magistrates) may increase the case weights if not restored prior to the next case-weight update. Increased case weights may translate into the need for more judge-ships.

. The Florida State Courts System's Legislative Budget Request for Fiscal Year 2012/2013 is available on the Florida Fiscal Portal at http://floridafiscalportal.state.fl.us/.

. Available at http://www.myfloridahouse.gov/ filestores/Adhoc/Appropriations/GAA/2011-Senate/CR_SB_2000.pdf.