# Supreme Court of Florida

_____

No. SC17-1936
_____

**IN RE:  CERTIFICATION OF NEED
FOR ADDITIONAL JUDGES.**

[November 22, 2017]

PER CURIAM.

This opinion fulfills our constitutional obligation to determine the State's

need for additional judges in fiscal year 2018/2019 and to certify our "findings and

recommendations concerning such need" to the Legislature.[1]  Certification is "the

sole mechanism established by our constitution for a systematic and uniform

_____

1.  Article V, section 9, of the Florida Constitution provides in pertinent part:

> **Determination of number of judges.**—The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits.  If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.

assessment of this need." In re Certification of Need for Additional Judges, 889 So. 2d 734, 735 (Fla. 2004). In this opinion, we are certifying a need for two additional circuit court judges, two additional county court judges, and none in the district courts of appeal as discussed below. We are also decertifying the need for thirteen county court judgeships.

## TRIAL COURTS

The Florida Supreme Court continues to use a weighted caseload system as a primary basis for assessing judicial need for the trial courts.[2] Using this objective threshold standard, we have examined case filing and disposition data, analyzed various judicial workload indicators, applied a three-year average judicial need, and considered judgeship requests submitted by the lower courts including all secondary factors identified by each chief judge for support of their requests. We have also incorporated a rigorous judicial workload per judge threshold analysis and an allowance for administrative time spent by chief judges and county court time spent on county election canvassing boards. Applying this methodology, this Court certifies the need for four additional judgeships statewide, two of which are in circuit court and two in county court. See Appendix. We are also decertifying thirteen county court judgeships. See Appendix.

---

2. Our certification methodology relies primarily on case weights and calculations of available judge time to determine the need for additional trial court judges. See Fla. R. Jud. Admin. 2.240.

As noted in previous opinions, our judges and court staff continue to work diligently to administer justice, promptly resolve disputes, and ensure that children, families, and businesses receive the proper amount of judicial attention for their cases. They do so despite a demonstrated need for additional judges since 2007 and with a smaller staffing complement.

Our most recent analysis of trial court statistics from fiscal year 2015/2016 to preliminary data for fiscal year 2016/2017 indicates a ten percent increase in county civil filings (excluding civil traffic infractions), a five percent increase in circuit civil filings (excluding real property/mortgage foreclosures), a three percent increase in probate filings, and a two percent increase in dependency filings. At the same time, criminal traffic filings (including driving under the influence) declined by 16 percent, civil traffic infractions declined by six percent, county criminal filings declined by five percent, juvenile delinquency filings declined by five percent, and felony filings experienced a two percent decline.

Similar downward filing trends are occurring nationally and we continue to closely monitor filing trends throughout the state as filings relate to judicial case weights and influence workload analysis. It is notable, however, that the opioid epidemic is severely impacting communities in Florida and across the country.

Ninety-one Americans die every day from an opioid overdose.[3] This epidemic has influenced Florida's child welfare system and has resulted in an increased number of dependency court cases throughout the state. Many trial courts have established Early Childhood Courts for families affected by the opioid epidemic by offering a continuum of evidence-based services, including Child-Parent Psychotherapy—an intervention aimed at healing trauma. According to the Florida Department of Law Enforcement, Florida Medical Examiners Report, in 2016, six of the seven Florida counties with the most opioid-related deaths have an Early Childhood Court in place.[4]

Notwithstanding the decreases to some filing categories, our judicial workload-per-judge analysis indicates that additional circuit court and county court judgeships are necessary in some areas.

Chief judges have identified many workload trends that are affecting court operations throughout the state. Several of the chief judges cited the additional workload associated with the continuing expansion of problem-solving courts (e.g., Adult Drug Court, Veterans' Court, Mental Health Courts, and Early Childhood

---

3. Centers for Disease Control and Prevention, Understanding the Epidemic, (last updated August 30, 2017), https://www.cdc.gov/drugoverdose/epidemic/index.html.

4. Florida Behavioral Health Association, Florida's Opioid Crisis, (January 2017), available at http://www.fadaa.org/links/Opioid%20Media%20Kit_FINAL.pdf.

Courts). We recognize that various studies have shown that well-conducted problem-solving courts, such as drug courts, have been shown to reduce recidivism and provide better outcomes for participants.[5] Yet, these courts also require significantly more judicial time on the front end due to more frequent status hearings and multidisciplinary team meetings, typically over an extended period of time. Other chief judges noted the impact of complex civil litigation, high jury trial rates, and self-represented litigants. Collectively, these factors affect court time and court resources.

The chief judges have also noted that the number and frequency of court interpreting events protract case disposition times. Florida is an ethnically and culturally diverse state with thousands of non-English speaking residents who access our courts each year. This demand is expected to increase in coming years. This Court is mindful of the demographic changes occurring in Florida and has implemented rigorous steps to ensure that the quality of court interpreting services remains high by requiring credentialed interpreters to provide interpreting services[6]

---

5. Shannon M. Carey, et al., <u>What Works? The Ten Key Components of Drug Court: Research-Based Best Practices</u>, 8 Drug Court Review 6, 6-42 (2012); Christopher Lowenkamp & Edward Latessa, <u>Evaluation of Ohio's CCA Funded Programs</u> (2005) (unpublished report) (University of Cincinnati, Division of Criminal Justice); Deborah Koetzle Shaffer, <u>Looking Inside the Black Box of Drug Courts: A Meta-Analytic Review</u>, 28 Justice Quarterly 493, 493-521 (2011).

6. <u>See In re Amends. to Fla. Rules for Certification & Regulation of Spoken Language Court Interpreters</u>, 176 So. 3d 256, 257 (Fla. 2015).

and also by implementing video remote interpreting services in ten circuits using credentialed interpreters which we would like to expand further. The application of this technology demonstrates the court system's commitment to cost containment, innovation, and improved service delivery, while meeting due process of law requirements.

Similar efforts are occurring using software applications such as Open Court and the Integrated Case Management System developed by the Eighth Judicial Circuit. Both software platforms are open source and have tremendous potential for cost containment and the avoidance of vendor dependency issues associated with the purchase of specialized technology. We encourage the Legislature to favorably consider our Legislative Budget Request[7] for technology as it demonstrates the judicial branch's commitment to apply technology in our service delivery staffing models, to help minimize our requests for additional full-time equivalent positions.

Nevertheless, chief judges advise that the lack of sufficient support staff positions contributes to slower case processing times, crowded dockets, and longer waits to access judicial calendars. Additional case management staff is a priority for the judicial branch. Accordingly, we fully support the trial courts' Legislative

---

7. The Florida State Courts System's Legislative Budget Request for Fiscal Year 2018/2019 is available on the Florida Fiscal Portal at http://floridafiscalportal.state.fl.us/.

Budget Request[8] that seeks additional funding for case managers, as these positions are integral to case disposition, docket management, and pending caseload reduction.

On a related matter, chief judges have advised us that because in-court administrative staff, both case managers and in-court clerk's office staff, has been either reduced or eliminated due to budget reductions, many trial court judges are now performing in-court administrative duties such as managing the court record, handling exhibits, swearing witnesses, filing documents, and making notations in the case management systems. Judges performing ministerial and administrative functions is not the best use of judicial time and supports the need for additional case management assistance that is best supplied by case managers.

Several of the chief judges also advised that they are experiencing difficulty in securing senior judges to serve within their circuits. While the Court believes that our senior judge day allotment may be sufficient, there simply are not enough senior judges available to take the assignments. We remain concerned that the one-year sit-out provision for retiring judges is therefore impeding the court system's ability to secure senior judges in different regions throughout the state.

---

8. The Florida State Courts System's Legislative Budget Request for Fiscal Year 2018/2019 is available on the Florida Fiscal Portal at http://floridafiscalportal.state.fl.us/.

We encourage the Legislature to revisit the one-year sit-out requirement, as it is detrimental to Florida's court system and the administration of justice.

Our analysis, using the previously described judicial workload per judge threshold methodology, indicates that there is a positive need for additional circuit court and county court judgeships. In those circuits and counties where the need exceeds the current number of authorized judicial positions, the workload impact can vary depending on the total number of judges in a circuit available to absorb the excess work. Our threshold methodology suggests a judicial need when the ratio per judge is greater than 1.10. In practical terms, this means that judges must share excess workload, leaving each judge with a total of 1.10 full-time equivalent of judicial work prior to a circuit court or county court being considered for a new judgeship.

The analysis also revealed that judicial need is less than the current number of authorized positions among county court judgeships. That determination is made through an examination of quantitative and qualitative secondary factors. A reduction in judicial need is initially presumed to occur in any court where the workload per judge is below 0.90. Judicial positions should be subtracted until the ratio is at or above 0.90. To better assess whether we should decertify any trial court judgeships, we conducted an analysis of secondary factors identified by the chief judge of each affected county. The factors that might weigh against

decertification included geography, number of branch courthouses, access to justice concerns, and other factors listed in the Florida Rules of Judicial Administration.[9] After careful consideration of all factors, we are certifying the need for two additional circuit court judgeships in the Ninth Judicial Circuit and two additional county court judgeships in Hillsborough County.

Applying these same factors, we are also decertifying county court judgeships in the following counties: one county court judgeship in Alachua County, three county court judgeships in Brevard County, one county court judgeship in Charlotte County, one county court judgeship in Collier County, one county court judgeship in Escambia County, one county court judgeship in Leon County, one county court judgeship in Monroe County, two county court judgeships in Pasco County, one county court judgeship in Polk County, and one county court judgeship in Putnam County. With the exception of Monroe County, where we are decertifying only one of the two county court judgeships that could potentially be decertified, the decertification includes counties we monitored last year that continue to demonstrate a negative need for two consecutive review cycles. Due to the impact of Hurricane Irma in Key West and the uncertainties related to litigation expected to occur in its aftermath, we will monitor the county

---

9. See Fla. R. Jud. Admin. 2.240(b)(1)(B).

court workload in Monroe County for an additional year as that county recovers and stabilizes.

Over the next twelve months, we will be closely monitoring the judicial workload of one circuit and nine counties[10] that demonstrate a negative need, but also identified supplemental factors recognized in rule 2.240, which influence against decertification, to determine whether additional decertifications should occur in next year's certification of need opinion.

It is important to note that we did not certify the need for an additional county court judgeship in three counties where they were requested (Citrus, Flagler, and Lee) and we certified only two county judgeships in Hillsborough, rather than the three requested, even though in all four requesting counties the judicial workload per judge demonstrates a need. We recognize that those county judges are currently shouldering what our data indicate to be more than a full-time judicial workload. Citrus, Hillsborough, and Lee counties demonstrated a current need, but were not certified additional judgeships, or in Hillsborough's case is being certified one fewer judgeship than requested, due to the continued decline in each county's judicial workload when compared to last year. Citrus County workload declined by fourteen percent, Hillsborough County workload declined by

_____

10. Eighth Judicial Circuit, Brevard County, Collier County, Duval County, Leon County, Miami-Dade County, Monroe County, Pinellas County, Polk County, and Volusia County.

four percent, and Lee County workload declined by seven percent. Considering the possibility that this downward trend will continue, if this Court certified the need for an additional county court judgeship this year, we might be obligated to decertify the same county court judgeship in the near future. In Flagler County, the county court judicial workload per judge increased two percent when compared to last year. However, if an additional county court judgeship were certified this year, Flagler County's judicial workload per judge would fall below the 0.90 threshold, thus putting this Court in the position of potentially decertifying the same county court judgeship in next year's opinion.

The Court does not take these steps lightly; rather, we do so recognizing that we must remain consistent in our application of the workload methodology and our obligations under Article V, section 9, of the Florida Constitution.

## DISTRICT COURTS OF APPEAL

In keeping with our policy of not requesting judgeships unless qualified and requested by the chief judge of a district court, we do not certify the need for any additional district court judges.

In the fiscal year 2017/2018 certification opinion, the Court expressed a concern with the judicial workload indicating possible overstaffing in the Third District Court of Appeal. See In re Certification of Need for Additional Judges, 206 So. 3d 22, 36 (Fla. 2016). In addition, the Court requested input from the

- 11 -

Third District Court of Appeal regarding staffing since that court does not employ a central staff model.  Id.

We appreciate the thorough response to our inquiries from the chief judge of the Third District Court of Appeal.  According to that response, the judicial workload within the Third District Court of Appeal includes a large amount of complex cases.  The court handles multiple appeals and petitions involving complex business litigation, class actions, forum non conveniens, tobacco liability cases, bad faith insurance claims, and public development.  Forum non conveniens cases are often difficult because they include competing legal opinions regarding the law of foreign countries.

The percentage of cases heard at oral argument in the Third District Court of Appeal was also double the figures for the other district courts of appeal, as documented by OPPAGA in its report issued in February of this year.[11] Additionally, Miami-Dade has been a primary destination for immigrant juveniles for the last two fiscal years.  These cases present the judges in the Third District Court of Appeal with substantive legal questions and due process issues that merit and receive additional time and attention.

---

11.  See Florida Legislature, Office of Program Policy Analysis and Government Accountability, A Review of the Florida District Courts of Appeal Boundaries and Workload, Report No. 17-05, February 2017, http://www.oppaga.state.fl.us/Summary.aspx?reportNum=17-05.

## CONCLUSION

We have conducted both a quantitative and qualitative assessment of trial court and appellate court judicial workload. Using the case-weighted methodology and the application of other factors identified in Florida Rule of Judicial Administration 2.240, we certify the need for four additional trial court judges in Florida, consisting of two in circuit court and two in county court, as set forth in the appendix to this opinion. We are also recommending the decertification of thirteen county court judgeships, also identified in the appendix, and we certify no need for additional judges in the district courts of appeal.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

Original Proceeding – Certification of Need for Additional Judges

## APPENDIX
## Trial Court Need

| Circuit | Circuit Court Certified Judges | County | County Court Certified Judges | County Court Decertified Judges |
|---|---|---|---|---|
| 1 | 0 | Escambia | 0 | 1 |
| 2 | 0 | Leon | 0 | 1 |
| 3 | 0 | N/A | 0 | 0 |
| 4 | 0 | N/A | 0 | 0 |
| 5 | 0 | N/A | 0 | 0 |
| 6 | 0 | Pasco | 0 | 2 |
| 7 | 0 | Putnam | 0 | 1 |
| 8 | 0 | Alachua | 0 | 1 |
| 9 | 2 | N/A | 0 | 0 |
| 10 | 0 | Polk | 0 | 1 |
| 11 | 0 | N/A | 0 | 0 |
| 12 | 0 | N/A | 0 | 0 |
| 13 | 0 | Hillsborough | 2 | 0 |
| 14 | 0 | N/A | 0 | 0 |
| 15 | 0 | N/A | 0 | 0 |
| 16 | 0 | Monroe | 0 | 1 |
| 17 | 0 | N/A | 0 | 0 |
| 18 | 0 | Brevard | 0 | 3 |
| 19 | 0 | N/A | 0 | 0 |
| 20 | 0 | Charlotte | 0 | 1 |
| | | Collier | 0 | 1 |
| **Total** | **2** | **Total** | **2** | **13** |