# Supreme Court of Florida

_____

No. SC21-1543
_____

**IN RE:  REDEFINITION OF APPELLATE DISTRICTS AND CERTIFICATION OF NEED FOR ADDITIONAL APPELLATE JUDGES.**

November 24, 2021

PER CURIAM.

Consistent with the recommendations of a Court-appointed assessment committee, this Court has determined that a sixth appellate district should be created in Florida and that accompanying changes should be made to the existing boundaries of the First, Second, and Fifth districts.[1]  Also consistent with the

_____

1.  Article V, section 9 of the Florida Constitution provides in pertinent part:

> **Determination of number of judges.—**The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits.  If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing,

assessment committee's recommendations, the Court has determined that six new appellate judgeships are needed for the continued effective operation of the newly aligned district courts of appeal of this state. The subject of trial court certification of need for additional judges is addressed in a separate opinion.[2]

## I. Background

In May 2021, this Court appointed a District Court of Appeal Workload and Jurisdiction Assessment Committee[3] composed of appellate judges, trial court judges, and lawyers to evaluate the necessity for increasing, decreasing, or redefining the appellate districts. The Committee evaluated the operation of the existing districts using the five criteria prescribed in Rule of General

decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.

2. *See In re Trial Court Certification of Need for Additional Judges*, No. SC21-1542 (Fla. Nov. 24, 2021).

3. *See In re District Court of Appeal Workload and Jurisdiction Assessment Committee*, Fla. Admin. Order No. AOSC21-13 (May 6, 2021).

Practice and Judicial Administration 2.241: effectiveness, efficiency, access to appellate review, professionalism, and public trust and confidence. The Committee filed its final report[4] with the Court on September 30, 2021. By this certification, the Court adopts the Committee's recommendation for a realignment of the state's appellate districts in order to create a sixth district, which we conclude would significantly improve the judicial process.

## II. District Realignment

A discussion of the full background and reasoning for the Committee's recommendation concerning a new appellate district is contained in the Committee's final report and recommendations. A majority of the Committee recommended the creation of at least one additional district court, with a plurality supporting the creation of a sixth district and the adjustment of the existing district lines in the manner we certify in this opinion.

The "primary rationale" for this recommendation "is that creation of an additional DCA would promote public trust and

---

4. District Court of Appeal Workload and Jurisdiction Assessment Committee Final Report and Recommendations, https://www.flcourts.org/DCA-Committee-Report.

confidence."  This rationale is linked specifically to the provisions of

rule 2.241(d), which sets forth "public trust and confidence" as one

of the criteria to be considered when determining the necessity for

increasing, decreasing, or redefining appellate districts.  The rule

sets forth several factors to be evaluated in connection with the

public trust and confidence criterion:

> **Public Trust and Confidence**. Factors to be considered for this criterion are the extent to which each court:
> (A) handles its workload in a manner permitting its judges adequate time for community involvement;
> (B) provides adequate access to oral arguments and other public proceedings for the general public within its district;
> (C) fosters public trust and confidence given its geography and demographic composition; and
> (D) attracts a diverse group of well-qualified applicants for judicial vacancies, including applicants from all circuits within the district.

Fla. R. Gen. Prac. & Jud. Admin. 2.241(d)(5).

Regarding these factors, the Committee report observes:

> Specifically, an additional [district court] would help provide adequate access to oral arguments and other proceedings, foster public trust and confidence based on geography and demographic composition, and attract a diverse group of well-qualified applicants for judicial vacancies including applicants from all circuits within each district.

Assessment Committee Report at 3-4.

- 4 -

We agree with the Committee's conclusion that public trust and confidence will be enhanced by the creation of a sixth district court. We recognize that the rule factors related to public trust and confidence are largely subjective and that they are affected by circumstances that go beyond the number of district courts and the configuration of district boundaries. Nonetheless, we believe that the factors are meaningful considerations and that the Committee has identified a reasonable basis for its proposal.

A salient issue relevant to this criterion is the serious underrepresentation among district court judges of judges from within the Fourth Judicial Circuit, which contains Jacksonville, one of Florida's largest metropolitan areas. Under the current configuration of district courts, the Fourth Judicial Circuit generates 29 percent of the filings of the First District Court, but only two judges—constituting 13 percent of the judges on the First District Court—are from the Fourth Judicial Circuit. Even more striking, the population of the Fourth Circuit—with its 2 out of 15 DCA judges—makes up 37.5% of the population of the current First

District.[5] Although no district court configuration will perfectly address every relevant consideration, the configuration proposed in the Committee's plurality plan would help address this geographical anomaly existing in the current district court system.

The creation of a new district court, like any other significant change in the judicial system, would be accompanied by some degree of internal disruption, but we conclude that any such internal disruption in the district courts associated with the creation of a sixth district court would be short-lived and would be outweighed by the benefit of enhanced public trust and confidence.

Appended to this certification is a map showing the geographical areas to be within the recommended, realigned districts. Also appended to this certification is a table showing the counties and judicial circuits affected by the proposed new district boundaries. As shown, the Fourth Judicial Circuit[6] moves from the

---

5. As of January 1, 2019, the population of the Fourth Circuit was 1,264,060 and the population of the First District was 3,346,191.

6. The Fourth Judicial Circuit is composed of Clay, Duval, and Nassau counties.

First District into the Fifth District, composed of the Fourth, Fifth, Seventh, and Eighteenth judicial circuits; the Ninth Judicial Circuit[7] moves from the Fifth District into the Second District, composed of the Ninth, Tenth, and Twentieth judicial circuits; and the Sixth,[8] Twelfth,[9] and Thirteenth[10] judicial circuits move from the Second District to compose a newly created Sixth District Court of Appeal. The boundaries of the Third and Fourth district courts are unaffected by this proposal.

The Court acknowledges that a variety of operational issues with policy and fiscal implications will arise from creating an additional district court and revising the territorial jurisdiction of other courts. For example, the Florida Constitution, under article V, section 4, requires the appointment of a clerk and a marshal to

---

7. The Ninth Judicial Circuit is composed of Orange and Osceola counties.

8. The Sixth Judicial Circuit is composed of Pasco and Pinellas counties.

9. The Twelfth Judicial Circuit is composed of DeSoto, Manatee, and Sarasota counties.

10. The Thirteenth Judicial Circuit is composed of Hillsborough County.

each district court.  A new district court will also require associated administrative, security, and information technology support staff. Additionally, the realigned Second District will require an interim facility in which to operate while a more permanent facility is considered.  The Court is prepared to assist the Legislature, as needed, in determining an appropriate level of court system resources associated with the creation of the new district court, the details of which will be dependent upon the policy direction the Legislature establishes.  Other potential operational effects on justice system entities are discussed in the Committee's report.

### III.  Additional Judges

This opinion also fulfills our constitutional obligation to determine the State's need for additional district court judges in fiscal year 2022/2023 and to certify our "findings and recommendations concerning such need" to the Florida Legislature.[11]  Certification is "the sole mechanism established by our constitution for a systematic and uniform assessment of this

---

11.  Art. V, § 9, Fla. Const.

- 8 -

need." *In re Certification of Need for Additional Judges*, 889 So. 2d 734, 735 (Fla. 2004).

The Court continues to use a verified objective weighted caseload methodology as a primary basis for assessing judicial need.[12] When applied to the district courts as they currently exist, the methodology does not indicate the need for certification or decertification of additional judgeships. However, the simultaneous consideration of the creation of an additional district court and the realignment of existing district boundaries raises policy considerations with workload implications.

Article V, section 8 of the Florida Constitution provides that "[n]o person shall be eligible for office of justice or judge of any court unless the person is an elector of the state and resides in the territorial jurisdiction of the court." The District Court of Appeal Workload and Jurisdiction Assessment Committee recommended that no existing district court judge's position be decertified while that judge is in office and that no existing district court judge have

---

12. Our certification methodology relies primarily on the relative weight of cases disposed on the merits to determine the need for additional district court judges. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.240.

to change residence in order to remain in office as a result of the realignment of districts. The Committee also recognized that, if such a policy approach were adopted, there might not be sufficient judges residing within included counties to meet the estimated judicial workload of that realigned district. In turn, the number of judges in another district may initially exceed its estimated need after realignment. Although it was not charged with determining the need for additional judges, the Committee used a modified weighted caseload methodology, only slightly different from that used in certification, to estimate judicial need as it considered realignment of existing districts and creation of an additional district. That methodology suggested the need for six appellate judges to meet the workload of realigned districts without a sufficient number of judges who currently reside within the boundaries of the districts.

The Court concurs with the Committee's recommendation that realignment of districts not result in decertification of judges or a requirement for judges to change their residence in order to remain in office. Thus, we adopt the Committee's methodology to meet the need of districts without sufficient resident judges and in this

- 10 -

opinion certify the need for six additional district court judgeships, one in the realigned Second District and five in the realigned Fifth District. This assessment is based on the assumption that each existing judge who resides within a county that was proposed for assignment to a new district court would be considered a judge of the new district court.

The creation of the new judgeships we have certified would result in six district courts of appeal composed of the following judicial officers:

*First District:* 13 judges (all presently sitting).

*Second District:* 10 judges (9 presently sitting and 1 to be added).

*Third District:* 10 judges (all presently sitting).

*Fourth District:* 12 judges (all presently sitting).

*Fifth District:* 12 judges (7 presently sitting and 5 to be added).

*Sixth District:* 13 judges (all presently sitting).

Further, the Court recommends that the legislation implementing the territorial jurisdiction changes specify that vacancies will not be deemed to occur as a result of the changes and recommends that excess judicial capacity in a given district

- 11 -

court be addressed over time through attrition, as guided by this Court's annual certification of the need for additional appellate judges. The creation of an additional district and changes to the territorial boundaries of other districts are milestone events that have not occurred since the creation of the Fifth District Court of Appeal in 1979. It will take some time to fully assess the impact of these changes on workload and judicial need for any given court and statewide.

We decertify no district court judgeships. As noted above, the Court recommends that the creation of an additional district and realignment of existing districts not result in decertification of existing judges, pending an opportunity to fully assess workload need over time through future certification processes. In addition, statutory amendments and other relevant circumstances militate against decertification of any appellate court judgeships.

Specifically, the impact of the Coronavirus Disease 2019 (COVID-19) pandemic in the circuit and county courts has been significant. Those operational impacts at the trial court level have a direct bearing on the number of appeals filed in the district courts.

An increase in district court workload is anticipated as the trial courts fully return to normal operations.

Another issue requiring consideration, because it influences this Court's ability to accurately project judicial need, is the transfer of circuit court authority to hear appeals from county court final orders and judgments in criminal misdemeanor cases and most civil cases to the district courts of appeal effective January 2021 (Chapter 2020-61, sections 3 and 8, Laws of Florida). These changes are affecting the respective distribution of judicial workload between the circuit and district courts. However, given that this change occurred during the COVID-19 pandemic, it has been difficult to determine the ultimate workload associated with this statutory change.

## IV. Certification

In accordance with article V, section 9 of the Florida Constitution, we therefore certify the need for six additional district court of appeal judgeships, bringing to 70 the total number of judges on the state's district courts of appeal, and we recommend that the state's judicial districts be aligned as follows:

*First District:* to contain the First, Second, Third, Eighth, and Fourteenth judicial circuits.

*Second District:* to contain the Ninth, Tenth, and Twentieth judicial circuits.

*Third District:* to contain the Eleventh and Sixteenth judicial circuits.

*Fourth District:* to contain the Fifteenth, Seventeenth, and Nineteenth judicial circuits.

*Fifth District:* to contain the Fourth, Fifth, Seventh, and Eighteenth judicial circuits.

*Sixth District:* to contain the Sixth, Twelfth, and Thirteenth judicial circuits.

To implement these proposals, the Court certifies to the Legislature the need to amend chapter 35, Florida Statutes, to create a new district court of appeal and realign the other district court boundaries as described above. As to judges currently residing in the realigned districts, no vacancies in office shall be deemed to occur by reason of the realignment of districts. Consequently, if the certified plan is adopted the two First District judges residing in Duval County shall be judges of the Fifth District

(which will include Duval County); the three Second District judges residing in Pinellas County, one residing within Pasco County, one residing in Manatee County, and eight residing in Hillsborough County shall be judges of the Sixth District (which will include those counties); and the six Fifth District judges residing in Orange County shall be judges of the Second District (which will include Orange County).

We recommend no decertification of district court judgeships.

We further certify that the realignment of the state's judicial districts and the certification of six district court judges, as set forth in the appendix to this opinion, are necessary, and we recommend that the Legislature enact the applicable laws and appropriate funds so that the adjustments can be implemented.

It is so ordered.

CANADY, C.J., and LABARGA, LAWSON, MUÑIZ, and COURIEL, JJ., concur.
GROSSHANS, J., concurs in result only.
POLSTON, J., dissents with an opinion.

POLSTON, J., dissenting.

The majority certifies a need for an additional district court of appeal and 6 additional district court of appeal judges that is not

- 15 -

supported by any of the 5 chief judges of the district courts of appeal or by any district court of appeal judge on the District Court of Appeal Workload and Jurisdiction Assessment Committee. I agree with the district court of appeal judges that no changes are justified.

Under our annual certification process for the need for additional judges, no district court requested certification of additional judgeships, and none are justified by the average projected judicial need analysis performed. In the last 20 years, there has been a net addition of 2 district court of appeal judges. One was decertified in the Third District Court of Appeal in 2009, one added to the Fifth District Court of Appeal in 2015, and 2 were added to the Second District Court of Appeal in 2015. No more changes have been needed in the last 6 years, and the answer should be the same now. There is no objective justification for the 6 additional judges certified by the majority.

Instead, the majority approves the Committee's recommendation to create an additional district court of appeal because it believes there should be more judges from Jacksonville as a matter of public trust and confidence. It is the creation of the

Sixth District Court of Appeal that provides the rationale for 6 new judges, not needed workload capacity. Two of the 15 judges on the First District Court of Appeal are from Jacksonville, which the majority treats as "serious underrepresentation." Majority op. at 5. Objectively, that is not the case.

Looking specifically at Jacksonville, Duval County had 926 cases filed in fiscal year 2019-20 at the First District.[13] Using the same metrics the Court uses to determine the certified need for judges on district courts of appeal, taking those 926 Duval cases divided by 239, the 3-year average weighted judicial workload per judge (2017-18 to 2019-20) for the First District, there would be a calculated need for 3 judges specifically as to Duval. Arguably the average number should be even higher as eligible judges are based

_____

13. The information used in this paragraph was obtained from the Committee's report, Appendix D-41, the DCA Workload and Jurisdiction Assessment Committee, DCA Filings and Dispositions by Circuit/County, Fiscal Year 2017-18, 2018-19, and 2019-20; Appendix D-12 District Courts of Appeal Judicial Workload Per Judge and Percent Change; and Certification of Need for Additional Judges FY 2022-23, 2A-1 District Courts of Appeal Fiscal Year 2022-23. Amounts per judge are rounded down, consistent with the annual practice to determine the number of needed positions.

on the presumptive need of 315 average weighted judicial workload per judge after application of the additional judgeships. Based on that number, there would be a calculated need for 2 judges specifically as to Duval. Again, there are already 2 judges from Jacksonville on the First District. So looking at the most recent data, either there is no calculated need for an additional judge from Jacksonville, or perhaps one. Taking an average over 3 years (2017-18 to 2019-20), Duval had 1,178 filings, which would be a calculated need of 4 judges (based on 239, the 3-year average per judge), or 3 judges (based on 315, the average presumptive need per judge). Using this 3-year average, there would be a calculated need for 1 or 2 more Jacksonville judges out of 15. At most, the additional 2 judges from Jacksonville are 13% of the 15 on the First District. Serious underrepresentation cannot be found at 13%.

As the majority notes, Jacksonville is a large metropolitan area. But the Florida Constitution does not provide for redistricting in the court system based on population size as it does for legislative representation, and the Committee properly did not do so. *See generally* art. III, § 16, Fla. Const. (providing reapportionment after each decennial census). It is court filings,

- 18 -

not population size that matters to how many judges are needed. As noted in the Committee's September 30, 2021, Final Report and Recommendations, page 10, "the number of [district court of appeal] filings, from calendar year 2016 through calendar year 2020 declined each year while Florida's population continued to increase during the same period." The statewide district court of appeal filings per 100,000 population steadily decreased each year from 116 in 2016 to 70 in 2020. Jacksonville's population size is not justification to add a sixth district court of appeal.

Moreover, the relevant portion of the rule setting out the factors for public trust and confidence is whether the court "attracts [a] diverse group of well-qualified applicants for judicial vacancies, including applicants from all circuits within the district." Fla. R. Gen. Prac. & Jud. Admin. 2.241(d)(5)(D). Significantly, the rule requires that the court attracts well-qualified applicants, not that certain applicants must be selected. Jacksonville has outstanding lawyers and judges, and I have the upmost respect for them. It is undisputable that there have been numerous well-qualified Jacksonville applicants to the First District, including making the short list, who were not selected in recent history or by

different governors over the last 20 years. But it is the governor's selection, not the inability to attract well-qualified applicants, that is relevant under the rule. *See generally* art. V, § 11, Fla. Const. (the governor fills vacancies in judicial office).

Further, the majority accepts the Committee's certification justification to provide adequate access to oral arguments. Again, this has no basis. The First District has panels that regularly travel to Jacksonville for oral arguments, in addition to Pensacola and Orlando (workers compensation cases). And all of the oral arguments are available live on the internet on the First District's website.

Rule 2.241(b)(8) has not been properly considered by the majority:

> (8) Whether or not an assessment committee is appointed, the supreme court shall balance the potential impact and disruption caused by changes in judicial circuits and appellate districts against the need to address circumstances that limit the quality and efficiency of, and public confidence in, the judicial process. Given the impact and disruption that can arise from any alteration in judicial structure, prior to recommending a change in judicial circuits or appellate districts, the supreme court shall consider less disruptive adjustments including, but not limited to, the addition of judges, the creation of branch locations, geographic or subject-matter divisions within judicial circuits or

appellate districts, deployment of new technologies, and increased ratios of support staff per judge.

This rule emphasizes that the Court should consider the disruptive effect of changes and attempt to minimize it by other means first. The cost for a new district court of appeal is very expensive. The September 13, 2021, letter to Judge Scales, Chair of the Committee, from Judge Roberts, Chair of the DCA Budget Commission, notes significant fiscal impacts including facilities, staffing, and operational expenses that would necessitate additional funding without causing significant negative fiscal impact on the current district court budget. The disruptions to the branch are significant. *See* majority op. at 13-15 (describing realignment boundaries and current judges). This certification is analogous to rebuilding a ship for what should be swapping out a couple of deck chairs at most.

Rule 2.241(b)(1) states that the Court "shall certify a necessity to increase, decrease, or redefine judicial circuits and appellate districts when it determines that the judicial process is adversely affected by circumstances that present a *compelling need* for the certified change." (Emphasis added.) There is no compelling need

for adding an additional district court of appeal. The majority makes no such finding.

Rule 2.241(b)(2) provides that the Court "may certify a necessity to increase, decrease, or redefine judicial circuits and appellate districts when it determines that the judicial process would be improved significantly by the certified change." The Committee provides no objective justification that the judicial process will be improved significantly by adding an additional district court of appeal.

The Court's rules and its responsibilities, along with the Legislature, in the certification process are at the direction of the Florida Constitution. As explained by article V, section 9 of the Florida Constitution, titled "Determination of number of judges":

> *The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits.* If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need. Upon receipt of such certificate, the legislature, at the next regular session, shall consider the findings and

recommendations and may reject the recommendations or by law implement the recommendations in whole or in part; provided the legislature may create more judicial offices than are recommended by the supreme court or may decrease the number of judicial offices by a greater number than recommended by the court only upon a finding of two-thirds of the membership of both houses of the legislature, that such a need exists. A decrease in the number of judges shall be effective only after the expiration of a term. *If the supreme court fails to make findings as provided above when need exists, the legislature may by concurrent resolution request the court to certify its findings and recommendations and upon the failure of the court to certify its findings for nine consecutive months, the legislature may, upon a finding of two-thirds of the membership of both houses of the legislature that a need exists, increase or decrease the number of judges or increase, decrease or redefine appellate districts and judicial circuits.*

(Emphasis added.)

Specifically, the Florida Constitution authorizes the Legislature to make its own determination regarding appellate districts notwithstanding what the Court determines, with a two-thirds vote of the membership of both houses. Accordingly, if the Court were to determine there is no justification for changes under its rules, the Legislature is free to act according to the Constitution and draw the lines as a policy decision to provide more Jacksonville judges. That is the proper response to the Committee's recommendation.

- 23 -

Because there is not a compelling need or significant improvement to the judicial process as required by rule 2.241(b), I would not certify a new district court of appeal or any additional district court of appeal judges.

I respectfully dissent.

Original Proceeding – Certification of Need for Additional Appellate Judges

# APPENDIX
## District Court Need

| District | District Court Certified Judges |
|---|---|
| 1 | 0 |
| 2 | 1 |
| 3 | 0 |
| 4 | 0 |
| 5 | 5 |
| 6 | 0 |
| **Total** | **6** |

# Recommended Realignment of Districts



## Counties and Judicial Circuits Affected

| County | Circuit | Current District | Proposed District |
|---|---|---|---|
| Clay | Fourth | First | Fifth |
| Duval | Fourth | First | Fifth |
| Nassau | Fourth | First | Fifth |
| Orange | Ninth | Fifth | Second |
| Osceola | Ninth | Fifth | Second |
| Pasco | Sixth | Second | Sixth |
| Pinellas | Sixth | Second | Sixth |
| DeSoto | Twelfth | Second | Sixth |
| Manatee | Twelfth | Second | Sixth |
| Sarasota | Twelfth | Second | Sixth |
| Hillsborough | Thirteenth | Second | Sixth |